Mark J. LEWIS, Plaintiff,

v.

Bernard M. GOLDSMITH, III, Lawrence S. Robinson, Joel M. Handel, Thomas F. Kearns, Arthur Allen, Addison Fischer, Broadview Associates, a New Jersey partnership, Bear, Stearns & Co., Alexander Grant & Company, and CGA Computer Associates, Inc., Defendants.

Civ. A. No. 81–2399.

United States District Court, D. New Jersey.

Jan. 26, 1982.

Leonard Barrack, Daniel E. Bacine, Barrack, Rodos & McMahon, Philadelphia, Pa., for plaintiff.

Paul C. Kurland, Allan Dinkoff, Baer, Marks & Upham, New York City, for defendants Goldsmith, Robinson, Handel, Kearns and CGA Computer Associates, Inc.

Lorraine C. Parker, Curtis, Mallet-Prevost, Colt & Mosle, New York City, Anthony W. Fitzgerald, Red Bank, N. J., for defendants Allen and Fischer.

Jeffrey H. Squire, Shea & Gould, New York City, William J. Hunt, Whipple, Hunt, Ross & Hirsh, Newark, N. J., for defendant Bear, Stearns & Co.

Joseph H. Kott, Pitney, Hardin, Kipp & Szuch, Morristown, N. J., for defendant Alexander Grant & Co.

Brian F. McDonough, Shanley & Fisher, Newark, N. J., for defendant Broadview Associates.

## OPINION

DEBEVOISE, District Judge.

This matter is before the court on a motion for certification of a class of plaintiffs, pursuant to Rule 23 of the Federal Rules of Civil Procedure.

The named plaintiff, Mark J. Lewis, filed this action on July 28, 1981 under section 11 of the Securities Act of 1933, 15 U.S.C. § 77k, to recover for losses allegedly sustained in connection with his purchase of 100 shares of CGA Computer Associates, Inc. Plaintiff contends that his decision to purchase the shares was made in reliance upon a Registration Statement and Prospectus for a public offering of 1,050,000 shares of CGA, effective April 7, 1981, which contained misrepresentations of material fact and failed to disclose material facts in violation of the federal securities laws. Named as defendants are CGA, its senior management, two CGA shareholders whose shares were sold in the public offering pursuant to a business combination agreement, a partnership which acted as a finder in arranging the business combination, the managing underwriter of the offering and CGA's accounting firm.

Plaintiff seeks at this time to certify a class, pursuant to Rule 23(b)(3), consisting of all those similarly situated who purchased shares of CGA common stock pursuant to the April 7, 1981 Registration Statement and Prospectus, and who suffered damage as a result of such purchase, but excluding the defendants in this action and any subsidiary or affiliate of any defendant. In order to determine the propriety of class certification, it is necessary first to review the background of plaintiff's complaint and the nature of his claims. *Katz v. Carte Blanche Corp.,* 496 F.2d 747, 756–57 (3d Cir.), *cert. denied,* 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125 (1974).

### 1. Background

In accordance with a stipulated schedule, the parties have engaged in comprehensive discovery on the issue of class certification, including a lengthy deposition of the named plaintiff. The key background facts may be summarized very briefly, as follows.

Plaintiff, Mark J. Lewis, is a twenty-one year old undergraduate student at Ursinus College in Collegeville, Pennsylvania major-

ing in economics and political science. He is the nephew of his attorney-of-record in this action, Leonard Barrack, of the Philadelphia, Pennsylvania law firm of Barrack, Rodos & McMahon. During the summer of 1980 and for one and one-half weeks during the summer of 1981, plaintiff worked for the law firm of Barrack, Rodos & McMahon performing what he described as "basically clerical work, Xeroxing, stapling papers." (Plaintiff's Deposition, 12/22/81 at 106). For his work during the summer of 1980, plaintiff was paid $615 and for his work during the summer of 1981 he was paid nothing. (Plaintiff's Deposition, 12/22/81 at 107).

In the course of his studies, plaintiff has displayed an academic interest in class action lawsuits. In April, 1980 he prepared and submitted for college credit a fifty page paper entitled "An Examination of Class Actions." (Plaintiff's Deposition, 12/22/81, Exhibit 7). Part of his preliminary research for this paper was conducted in the early spring of 1980 in the law library of his uncle's law firm. Plaintiff states, however, that he neither discussed his paper with, nor was assisted by, any members of the law firm. (Plaintiff's Deposition, 12/22/81 at 15–18). In September of 1981, plaintiff submitted a topic proposal for a second research paper on class action lawsuits to the College Scholars Committee of his college. (Plaintiff's Deposition, 12/22/81, Exhibit 8). At the time of his deposition, he had not yet begun work on this paper. (Plaintiff's Deposition, 12/22/81 at 12).

Plaintiff testified in his deposition that he first became aware of a proposed public offering of CGA stock after reading the March 20, 1981 issue of Investment Dealer's Digest. (Plaintiff's Deposition, 11/11/81 at 125, 130). He then asked his broker for a preliminary prospectus of the offering and on April 7, 1981 purchased 100 shares of CGA at the offering price of $12.50 per share.

On July 16, 1981, the Securities and Exchange Commission initiated a proceeding under section 8(d) of the Securities Act of 1933, 15 U.S.C. § 77h(d), to determine whether a stop order should be issued suspending the effectiveness of the CGA Registration Statement. The primary focus of the Commission's inquiry was whether the accounting principles employed in the registration statement accurately reflected CGA's earnings so as not to be materially misleading to investors. (Complaint, Exhibit A).

Following the SEC's announcement of its proceedings, the price of CGA stock declined substantially. Plaintiff states that he became aware of the SEC's action and the subsequent decline in price upon reading an article and the stock price quotations in the July 20, 1981 issue of the *Wall Street Journal*. (Plaintiff's Deposition, 11/11/81 at 154). On July 20, 1981 he sold 50 of his original 100 shares of CGA at $7.50 per share incurring a monetary loss of $250. Plaintiff still retains the remaining 50 shares of CGA which he purchased on April 7, 1981.

Plaintiff testified that shortly after he learned of the decline in the price of CGA stock in the July 20, 1981 issue of the *Wall Street Journal* he contacted his uncle for advice as to whether he had a possible claim against CGA or others for violating the securities laws. (Plaintiff's Deposition, 11/11/81 at 111). Prior to this time, he stated, his uncle had not been aware of his ownership of this or any other stock. (Plaintiff's Deposition, 11/11/81 at 114). The Barrack, Rodos & McMahon firm conducted an investigation and advised plaintiff that he had a claim under the securities laws. A class action complaint was prepared and filed on July 28, 1981. (Plaintiff's Deposition, 11/11/81 at 175–76, 187). Plaintiff has testified that he is willing and able to undertake the costs and other responsibilities of maintaining a class action. (Plaintiff's Deposition, 11/11/81 at 168–69, 182–86).[1]

---

1. At the court's request during oral argument, plaintiff agreed to provide to defendant's counsel and to the court a statement of his net worth, with the understanding that it be re-

The complaint charges, in substance, that the Registration Statement and Prospectus filed in connection with the April 7, 1981 public offering of CGA stock was materially misleading in the following key respects: (1) in reporting the business combination which gave rise to the public offering it improperly utilized a pooling of interests method of accounting rather than a purchase method of accounting, thus overstating the future earnings of CGA (Complaint, ¶ 28, sections a–b and d–g); (2) it failed to disclose the risk that the SEC might challenge this method of accounting as materially misleading to investors (Complaint, ¶ 28, section c); and (3) it improperly combined the financial statements of CGA and an acquired company and overstated the earnings of the acquired company (Complaint, ¶ 28, section h). Plaintiff further contends that defendants knew, or reasonably should have known, that the statements in the Prospectus were false and misleading; and that he did not know, and with the exercise of due diligence could not have known, of the untrue statements and omissions when he purchased shares of CGA common stock. On behalf of himself and the class he purports to represent, plaintiff seeks damages for the monetary loss sustained as a consequence of the alleged securities laws violations.

## 2. Class Action Certification

In order to maintain a class action, plaintiff must first demonstrate compliance with the mandatory requirements of Rule 23(a). Rule 23(a) provides that:

One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

If the initial prerequisites of Rule 23(a) are met, plaintiff must additionally meet the requirements of at least one of the three subsections of Rule 23(b). Plaintiff here seeks certification of the proposed class under Rule 23(b)(3), which provides that an action may proceed as a class action if:

the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

"All the requirements enumerated must be satisfied by the proponent of certification before a class action determination may be made." *Piel v. National Semiconductor Corp.,* 86 F.R.D. 357, 364 (E.D.Pa.1980); *see also Katz v. Carte Blanche Corp., supra,* at 756–57. The Third Circuit has held, however, that "since the effectiveness of the securities laws may depend in large measure on the application of the class action device 'the interests of justice require that in a doubtful case... any error, if there is to be one, should be committed in favor of allowing the class action.'" *Kahan v. Rosenstiel,* 424 F.2d 161 (3d Cir. 1970), *quoting Esplin v. Hirschi,* 402 F.2d 94, 101 (10th Cir. 1968).

Defendants have advanced no objection to plaintiff's compliance with requirements (1) through (3) of Rule 23(a), nor do they contest the propriety of class certification under Rule 23(b)(3). They vigorously contend, however, that plaintiff is not an adequate class representative within the meaning of Rule 23(a)(4) and that certification should be denied on that basis.

In ruling on the motion for class certification, I will briefly review the criteria not at issue and focus upon the question whether plaintiff has demonstrated that he will "fairly and adequately protect the interests of the class."

tained under seal in the court filed and not revealed to other persons without an order of the court. Defendants have not contested the accuracy of the statement provided. Having

reviewed the document, I find that plaintiff has sufficient resources to conduct the present litigation on behalf of absent class members.

### 3. *Rule 23(a) Requirements*

A. *Numerosity.* Plaintiff has not at this stage of the litigation precisely enumerated the size of the class he proposes for certification. Nevertheless, since 1,050,000 shares of stock were sold pursuant to the April 7, 1981 public offering, common sense dictates the conclusion that the class is "so numerous that joinder of all class members is impracticable." *See Wolgin v. Magic Marker Corp.*, 82 F.R.D. 168, 171 (E.D.Pa. 1979); *In re Home Stake Production Company Securities Litigation*, 76 F.R.D. 351 (N.D.Okla.1977). Defendants do not contest the issue of numerosity. I conclude, therefore, that the requirement of Rule 23(a)(1) is satisfied.

B. *Commonality.* There are clearly issues of law and fact in this action, as in most securities actions involving the public issuance of stock, which are common to all members of the described class. If any purchaser of CGA stock pursuant to the April 7, 1981 public offering is to recover under section 11 of the Securities Act of 1933, he must show that the Registration Statement filed in connection with the offering "contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading." 15 U.S.C. § 77k(a). The issue of the accuracy and completeness of the Registration, therefore, will form the focus of this action and is common to each and every member of the class. *See Weiss v. Tenney Corp.*, 47 F.R.D. 283, 289 (S.D.N.Y. 1969). The issue of the various named defendants' culpability in connection with the Registration Statement and Prospectus will also be common to each member of the class. I conclude that the requirement of Rule 23(a)(2) has been met as well.

C. *Typicality.* All parties concede that, whether or not plaintiff is an adequate representative of the class, his securities claims are typical of those of the class he purports to represent. Indeed, since plaintiff and the remaining class members purchased indistinguishable shares of stock in one offering pursuant to a single Registration State-

ment and Prospectus, their claims are virtually identical. *Wolgin v. Magic Marker Corp., supra,* at 172; *cf. Bogosian v. Gulf Oil Corp.,* 561 F.2d 434, 449 (3d Cir. 1977). I conclude, therefore, that the requirement of Rule 23(a)(3) is met.

D. *Adequacy of Representation.* Rule 23(a)(4) provides that a member of a class may sue as a "representative part[y] on behalf of all" only if he will "fairly and adequately protect the interests of the class." The Third Circuit has held that:

[a]dequate representation depends on two factors: (a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class.

*Wetzel v. Liberty Mutual Insurance Co.,* 508 F.2d 239, 247 (3d Cir. 1975); *see also In re Fine Paper Antitrust Litigation,* 617 F.2d 22, 27 (3d Cir. 1980).

The Third Circuit has additionally held that it must appear that the named plaintiff, as well as his attorneys, "will competently, responsibly and vigorously prosecute the suit." *Bogosian v. Gulf Oil Corp., supra,* at 449; *see also Dolgow v. Anderson,* 43 F.R.D. 472, 493–94 (S.D.N.Y.1968).

Defendants readily concede that plaintiff's counsel is qualified, experienced and competent to pursue class action litigation arising under the securities laws and do not challenge their professional integrity. They contend, however, that plaintiff's familial relationship with his attorney together with his evident academic interest in class action lawsuits create potential conflicts of interest between plaintiff and the proposed class and create a risk that plaintiff will not vigorously and fairly prosecute the action. They further argue that plaintiff evidenced a lack of memory and candor in his deposition, disqualifying him from representing the class; that he has a minimal financial interest in the outcome of the litigation; and that plaintiff and his counsel have demonstrated a combative approach in the course of discovery which justifies denying certification.

### i. *Conflicts of Interest*

Defendants have identified five potential conflicts of interest between plaintiff and his counsel on the one hand and the remaining members of the class on the other which, they contend, render plaintiff an inadequate class representative.

Defendants first argue that a disqualifying conflict of interest is created by the fact that plaintiff is represented by his uncle and that plaintiff has worked in past summers for his uncle's law firm. It has been held in this circuit that "no member of the bar either maintaining an employment relationship, including a partnership or professional corporation, or sharing an office or suite space with an attorney class representative during the preparation or pendency of a Rule 23(b)(3) class action may serve as counsel to the class if the action might result in the creation of a fund from which an attorneys's fee award would be appropriate." *Kramer v. Scientific Control Corp.,* 534 F.2d 1085, 1093 (3d Cir. 1976). The reason for the rule is that a class representative whose counsel is a professional associate may be motivated by an interest in maximizing the award of attorneys fees in the action rather than maximizing the monetary recovery of the class. *See also Lowenschuss v. Bluhdorn,* 613 F.2d 18, 19 (2d Cir. 1980).

Some courts have extended the principle set forth in *Kramer v. Scientific Control Corp.* to hold that individuals closely related to a class action attorney or his partner or associate may not serve as class representatives or, alternatively, must retain new counsel. In *Susman v. Lincoln America Corp.,* 561 F.2d 86 (7th Cir. 1977), for example, the court held that a class could not adequately be represented by the class action attorney's brother due to a "natural assumption that brothers enjoy a close personal and family relationship and, consequently, would be inclined to support each other's interests." *Id.* at 95, *quoting SCA Services, Inc. v. Morgan,* 557 F.2d 110, 116 (attorney may not practice before a judge who is his brother). The *Susman* court declined, however, to adopt a per se approach, and held that in reviewing a petition for class certification "a court must examine the circumstances of each case." *Susman v. Lincoln American Corp., supra,* at 93–95. Other courts have permitted actions to proceed as class actions even though the named plaintiff was related to his or her attorney. *E.g., Fischer v. International Telephone and Telegraph Co.,* 72 F.R.D. 170 (E.D.N.Y.1976); *Dolgow v. Anderson, supra.*

On the facts of this case, I do not believe that because plaintiff is the nephew of his counsel he must be disqualified as a representative plaintiff. Plaintiff indicated in the course of his deposition that he is financially independent, having inherited money from his father and no suggestion has been made that he relies in any way upon his uncle for support. If plaintiff has any interest in the fee recovery of his attorneys, therefore, it is at best indirect. Moreover, it would seem a bit anomalous that an individual whose uncle has developed a reputation as a competent securities lawyer should be prohibited from turning to his uncle for assistance if he has a legitimate legal claim. Because defendants have advanced no concrete evidence to indicate that plaintiff's familial relationship to his attorney might hinder his representation of the class, and because I perceive no "spectre" or appearance of impropriety in the deposition testimony, I do not believe that the relationship itself poses an insuperable obstacle to qualifying plaintiff as a class representative.

I also find no impropriety in the fact that plaintiff worked during two summers for his counsel's law firm. The deposition testimony clearly establishes that plaintiff maintained no employment relationship with the law firm after he retained it as counsel in this action, nor is there any indication that plaintiff will return to the firm during the pendency of this action. Plaintiff's compensation for the clerical work he performed was minimal, and certainly not sufficient to give him the sort of financial stake in the firm which might sway his undivided interest in pursuing the interests

of the class. In short, there is nothing in the record presently before the court which would indicate that plaintiff's past employment relationship with his uncle's law firm creates any conflict of interest, actual or potential, which would disqualify him from serving as a representative plaintiff in this class action.

Defendants' second contention is that plaintiff's academic interest in the class action as a method of dispute resolution suggests that he might have motives in pursuing this action other than those held by the absent class members, and that these ulterior motives might impede his vigorous representation of the class. *See Rossini v. Ogilvy & Mather, Inc.,* 80 F.R.D. 131 (S.D.N.Y. 1980). Defendants suggest, for example, that plaintiff may have purchase shares of CGA and other "highly speculative" securities for the sole purpose of "finding a law suit," or that he may be disinclined to agree to a reasonable settlement because of a desire to incorporate first-hand experiences in his proposed paper on class actions. These arguments, however, are speculative at best. There is no indication in the deposition testimony that plaintiff actually purchased shares of CGA for the purpose of finding a law suit and, indeed, plaintiff vigorously denied such a suggestion. It is more likely that plaintiff's academic experiences made him aware of the possibility of legal action in connection with his stock holdings than that he acquired stocks for the purpose of commencing an action. As for plaintiff's academic interest in class actions, such an interest is likely to make him a more informed and more active participant in the litigation process, and therefore a superior rather than an inferior class representative. Should it develop at any stage of the litigation, of course, that plaintiff is not performing his function properly, it is the duty of the court to review the continued propriety of permitting him to serve as class representative. *In re Fine Paper Antitrust Litigation, supra,* at 27. For the time being, I find that plaintiff's academic work on the subject of class actions does not serve to disqualify him as a class representative.

Defendants' third contention is that plaintiff's continued ownership of 50 shares of CGA stock creates a conflict of interest since "plaintiff has a financial interest in minimizing the size of any settlement or judgment in order to minimize the impact of the settlement or judgment upon the market price of his CGA shares." (Defendants' Brief at 15). *See Wood v. Rex-Noreco, Inc.,* 61 F.R.D. 669 (S.D.N.Y.1973). The majority of cases, however, recognize that in virtually all securities actions of this nature there will be class members who have sold shares and some who have retained them, and have not found the conflict created to be sufficiently serious to defeat the certification of a class. *See, e.g., Blackie v. Barrack,* 524 F.2d 891 (9th Cir. 1975); *Herbst v. International Telephone & Telegraph Co.,* 495 F.2d 1308 (2d Cir. 1974). I conclude that plaintiff is not disqualified from serving as a class representative on the basis of his retention of 50 shares of CGA.

Defendants' fourth argument is that plaintiff is not qualified to represent the proposed class in this action because he "only understands the second claim and is only interested in pursuing that issue," and thus may "be unwilling to aggressively pursue this action if he is convinced in the future that the alleged failure to disclose is a less viable claim then [sic] he now believes, even if the other claims are meritorious." (Defendants' Brief at 16). I have reviewed plaintiff's deposition and find no indication that plaintiff's general understanding of the nature of this complex action in its entirety is insufficient to qualify him for his duties as a class representative. Plaintiff's general understanding coupled with his counsel's intimate familiarity with the details of the action will be more than adequate to protect the interests of the absent class members. I do not, therefore, find defendants' fourth contention persuasive.

Finally, defendants suggest that plaintiff may be motivated by spite in bringing this litigation since he stated in his deposition that he became angry upon discovering that

the value of his shares may have declined sharply following public disclosure of the SEC proceedings against CGA. *See Norman v. Arcs Equities Corp.,* 72 F.R.D. 502 (S.D.N.Y. 1976). Insofar as this assertion requires any response, it suffices to say that anger is a perfectly ordinary response to a discovery that one's securities have declined in value. There is no indication that plaintiff's irritation was abnormal in any way, nor is there any evidence suggesting that plaintiff has any personal grudge against the CGA corporation or any of the other defendants who have been named. Plaintiff's natural pique upon discovering his financial setback does not serve as a bar to his representation of the class proposed in this action.

ii. *Plaintiff's Lack of Memory*

█ Defendants assert that in the course of his deposition, which lasted over ten hours and consumed over three hundred pages of testimony, plaintiff evinced a lack of candor and an inability to remember details which indicate that he is not an adequate class representative. In support of this assertion, defendants point out a number of responses which they claim were not forthright or indicated confusion as to details.

Having reviewed the deposition in question, I do not find any indication that plaintiff intended to deliberately mislead his questioners, nor do I find that plaintiff's memory failed to serve him adequately. For the most part, plaintiff appeared to be relatively cooperative in the adversarial context of his deposition and to make a genuine effort to respond truthfully to the questions asked. Although plaintiff may have exercised a certain natural degree of caution in framing his responses and become understandably confused at times in the questioning process, defendants succeeded with little difficulty in drawing out a full discussion of plaintiff's trading in the stock market, academic pursuit of the subject of class actions and relationship with his uncle's law firm. The deposition certainly does not reveal a plaintiff who has either a limited awareness of the nature of his claims or seeks to obfuscate the efficient course of litigation to the possible detriment of other class members.

As defendants are undoubtedly aware, the question whether plaintiff intimately remembers the details of his financial transactions or even of his classwork has little relevance to the issues common to the class which will be tried in this lawsuit. The litigation will turn on the method of accounting employed in the April 7, 1981 Registration Statement and Prospectus, the involvement of the individual defendants in the preparation of the Prospectus and documentary evidence involving the purchase and sale of CGA shares by class members.

I conclude, therefore, that defendants have failed to make a persuasive argument that plaintiff's deposition reveals his inadequacy as a class representative.

iv. *Plaintiff's Stake in the Litigation*

Defendants next argue that plaintiff, even though he alleges that he sold 50 shares of CGA Computer Associates, Inc. at a price substantially lower than the purchase price, does not have a sufficient stake in the litigation to serve as an adequate class representative. Since plaintiff retained 50 shares, they argue, any recovery he obtains in this action will "probably" be offset by a further decline in the market price of CGA shares.

█ Simply because the named plaintiff's recovery may be small does not mean that he is an inadequate representative of the class. *Epstein v. Weiss,* 50 F.R.D. 387, 390 (S.D.N.Y. 1970). Whatever plaintiff's individual stake, defendants have virtually conceded that his counsel will pursue the matter vigorously and effectively. Moreover, plaintiff has himself indicated in his deposition that despite the small size of his current loss he is interested in actively pursuing the litigation, bearing the full costs necessary for notification of the class and other expenses, and otherwise performing his representative duties in a responsible fashion. Finally, defendants' argument that any recovery plaintiff obtains may be offset by a decline in the value of CGA

shares is purely speculative. Whatever becomes of plaintiff's retained shares, the fact remains that he sold half of the shares at a monetary loss of $5 per share and thereby suffered a concrete injury which gives him a financial stake in the outcome of this controversy.

The size of plaintiff's loss, therefore, does not foreclose his certification as an adequate class representative.

### v. *Failure to Cooperate in Discovery*

■ Defendants' final attack upon plaintiff's qualifications to serve as a class representative is based upon alleged interruptions, instructions to the witness not to respond and coaching of the witness by plaintiff's counsel during the extended deposition taken in anticipation of this motion. Defendants appear to object primarily to the refusal by plaintiff's counsel to permit them to inquire into the details of plaintiff's financial circumstances, pursuant to *Sanderson v. Winner*, 507 F.2d 477, 479–80 (10th Cir. 1974).

While plaintiff's counsel may have overstepped at times the boundaries of Rule 30's requirement that non-privileged evidence [2] be taken subject to objections, a review of the deposition in its entirety does not indicate that either plaintiff or his counsel unduly obstructed the discovery process. Indeed, for plaintiff's counsel to have requested a termination of the deposition in order to seek a protective order pursuant to Rule 26 would certainly have occasioned an unwarranted delay. Defendants tacitly acknowledged this fact by proceeding with the deposition once they learned that plaintiff's financial resources derived from an inheritance from his deceased father and foregoing a formal motion pursuant to Rule 37 to compel more complete answers.

I do not find that the tactics employed by plaintiff's counsel during plaintiff's deposition render plaintiff an inadequate class representative or justify denial of class certification.

For the foregoing reasons, I conclude that plaintiff is an adequate representative of the proposed class within the meaning of Rule 23(a)(4). As long as the requirements of Rule 23(b)(3) are met, therefore—a point defendants do not dispute—the class may be certified.

### 4. *Rule 23(b)(3) Requirements*

■ A class action is authorized under Rule 23(b)(3) if it can be shown that common questions of law or fact predominate over individual questions and that a class action is superior to other methods of adjudicating the claims of the various class members. *Katz v. Carte Blanche, supra,* at 756–57.

A review of the legal issues relevant to a determination of liability under section 11 of the Securities Act of 1933 reveals that common questions of law and fact will predominate in this action. The key elements of this case—whether the Registration Statement and Prospectus effective April 7, 1981 contain material misstatements or omit to state material facts and whether or not the individual defendants exercised "due diligence" in preparing the statement—are clearly common to all members of the class. The major issue which must be tried on an individual basis is that of damages. In a straightforward securities action such as this, however, the damages owing to the absent class members can be determined without great difficulty on the basis of documentary evidence and would not require time-consuming hearings.

A second legal issue which could conceivably require determination on an individual basis is that of reliance. It is not necessary for plaintiffs to show that they actually relied upon the representations in the statement itself, for it has been held that such reliance is "conclusively presumed." *Barnes v. Osofsky*, 373 F.2d 269, 272 (2d Cir. 1967); *Unicorn Field, Inc. v. Cannon Group, Inc.*, 60 F.R.D. 217 (S.D.N.Y. 1973). Nevertheless, section 11 of the 1933 Act creates

---

**2.** In connection with plaintiff's claim of privilege, *see DeMasi v. Weiss*, 669 F.2d 114, at 119–21 (3d Cir. 1982).

an exception to an issuer's liability for a registration statement containing misstatements or omissions if "it is proved that at the time of [his] acquisition [the purchaser] knew of such untruth or omission." 15 U.S.C. § 77k(a). On the current record, it does not appear likely that defendants will seriously press the defense of knowledge on the part of some or all of the proposed class members, and they have not argued in opposition to this motion a belief that individual issues will become unmanageable. I conclude, therefore, that the predominance requirement of Rule 23(b)(3) is satisfied.

The final question which must be addressed at this time is whether maintaining this suit as a class action will be superior to other methods of adjudicating the controversy. It has generally been recognized that an action brought under the securities laws involving numerous plaintiffs who have bought or sold shares in the marketplace under similar conditions can be adjudicated most efficiently as a class action. *See Esplin v. Hirschi,* 402 F.2d 94, 100 (10th Cir. 1968), *cert. denied,* 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459 (1969); *Escott v. Barchris,* 340 F.2d 731 (2d Cir. 1965). Where the claims of the various class members are as homogeneous as in this case—all purchased shares of the same stock offered pursuant to a single registration statement—there would be little point in conducting a multiplicity of virtually identical lawsuits. Such a procedure would be as burdensome to defendants as it would to plaintiffs and to the courts.

Defendants have not argued that they are likely to suffer any peculiar or unusual form of business harm as a consequence of the notice provisions of Rule 23. *See Katz v. Carte Blanche, supra,* at 762. Consequently, there is no reason to believe that a test case approach might be superior to a class action here. Indeed, by permitting a class action to be certified, defendants will enjoy the substantial benefits of *res judicata* should they prevail on the merits.

For the foregoing reasons, I conclude that not only have the mandatory requirements of Rule 23(a) been met in this action,

but the additional prerequisites of Rule 23(b) have been met as well. I shall enter an order, therefore, certifying the class proposed by the named plaintiff pursuant to Rule 23(c)(2).

Plaintiff's attorney is requested to submit a form of order consistent with this opinion.