**Jeffery B. CROSS and Nancy Cross, Plaintiffs,**

v.

**DICKSTEIN PARTNERS, INC. and Mark Dickstein, Defendants.**

**Mitchell DOBIES and Leslie Susser, Plaintiffs,**

v.

**DICKSTEIN PARTNERS, INC. et al., Defendants.**

**Sydney COHEN, Plaintiff,**

v.

**DICKSTEIN PARTNERS, INC. and Mark Dickstein, Defendants.**

**Linda M. GARIBALDI, Plaintiffs,**

v.

**DICKSTEIN PARTNERS, INC. and Mark Dickstein, Defendants.**

**Nos. 95 Civil 6247 (LLS), 95 Civil 9496 (LLS), 95 Civil 9343 (LLS), 95 Civil 6548 (LLS).**

United States District Court, S.D. New York.

April 1, 1997.

---

Stanley M. Grossman, Shaheen Rushd, Peter Safirstein, Pomerantz Haudek Block & Grossman, New York City, James S. Bailey, Jr., Randall M. Livingston, Bailey, Harring & Peterson, Denver, CO, Nadeem Faruqi, Lubna Faruqi, Faruqi & Faruqi, New York City, Glen DeValerio, Jeffrey C. Block, Michael G. Lange, Berman, DeValerio & Pease, Boston, MA, Allen D. Black, Donald L. Perelman, Michael D. Basch, Fine Kaplan and Black, Philadelphia, PA, Christopher Lovell, Lovell & Skirnick, P.C., New York City, Joseph Goldberg, John W. Boyd, Freedman, Boyd, Daniels, Hollander, Guttmann & Goldberg, Albuquerque, NM, Richard A. Lockridge, Patricia Bloodgood, Lockridge Grindal Nauen & Holstein, P.L.L.P., Minneapolis, MN, for plaintiffs.

Gary P. Naftalis, Alan R. Friedman, Kramer, Levin, Naftalis & Frankel, New York City, for defendants.

## MEMORANDUM AND ORDER

STANTON, District Judge.

In these related actions for securities fraud and breach of contract against Dickstein Partners, Inc., an investment firm, and Mark Dickstein, its president and sole shareholder (collectively "Dickstein"), plaintiffs move for an order certifying three classes of stock purchasers and proxy voters. Defendants contend that (1) the proposed class representatives are neither typical nor adequate, and (2) with respect to plaintiffs' contract claim, issues common to the proposed class do not predominate over issues affecting only individual class members.

## BACKGROUND

The amended complaint alleges the following facts.

In 1995, Dickstein held shares in Hills Stores, Inc. ("Hills"), a merchandise retailing concern. On May 3, 1995, Dickstein announced that it had offered to buy all of the outstanding Hills stock in a merger transaction. Dickstein "made clear" that if Hills' board of directors refused the offer, Dickstein would seek to replace that board in a proxy contest at the upcoming annual shareholder meeting, that Dickstein's slate of nominees would then seek to sell Hills at an auction, and that at such an auction Dickstein was prepared to offer at least $25 per share in cash to buy Hills, subject to obtaining financing and "other standard conditions." (Amended complaint at ¶ 36.)

On May 15, the Hills board announced that they had rejected the offer by Dickstein to buy Hills for $25 per share. The next day, Dickstein made public a letter from Mark Dickstein to Michael Bozic, Hills' president and chief executive officer, increasing the offer to $27 per share. The Hills board rejected that offer, too.

Dickstein then solicited proxy votes for its slate of nominees. Dickstein's proxy statement said that "All Dickstein nominees are committed to a program of offering Hills for sale, and selling Hills, to the buyer who is willing to pay the highest price." (*Id.* at ¶ 45.) Also included in that proxy statement was a letter from Mark Dickstein to Michael Bozic, which stated, "Our nominees would seek to sell Hills in an auction process to the highest bidder; an auction in which Dickstein Partners intends to offer at least as much as its current proposal." (*Id.* at 46.) Dickstein also made other public announcements about its proposal to buy or auction Hills. The annual meeting was held on June 23, and on

July 5, Hills announced that the Dickstein nominees were elected to the Hills board.

However, on July 20, Dickstein announced that it was withdrawing its offer to buy Hills' outstanding stock. On August 21, Hills announced that Dickstein was abandoning the plan to auction Hills to the highest bidder. (*Id.* at ¶ 61.) Upon each of those announcements, Hills' stock price declined.

## DISCUSSION

Plaintiffs move for certification of three classes. First, they seek certification of a class consisting of all purchasers of Hills common stock from May 3, 1995 through July 20, 1995. On behalf of that "purchaser class," they assert that defendants made false and misleading statements about their proposal to buy or auction Hills that constituted fraud and violated section 10(b) of the Securities Exchange Act of 1934 ("the Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder. Second, they seek certification of a class consisting of all persons who were solicited by defendants and voted for them or their nominees at Hills' annual meeting on June 23, 1995. On behalf of that "proxy fraud class," they assert that defendants made fraudulent statements in connection with the proxy contest in violation of section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a), and Rule 14a–9 promulgated thereunder. Third, they seek certification of a class consisting of all persons who voted for defendants and their nominees at Hills' annual meeting. On behalf of that "contract class," they claim that they formed a contract with defendants by voting for them, and that defendants breached the contract by not auctioning or buying Hills.*

Rule 23(a) of the Federal Rules of Civil Procedure provides that a party may sue as a representative of a class if

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the

representative parties will fairly and adequately protect the interests of the class.

In addition, the class may be certified only if one of the conditions listed in Rule 23(b) is satisfied. Plaintiffs contend that this case falls within Rule 23(b)(3), which applies where

the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

There is no dispute that the proposed classes are numerous enough for joinder to be impracticable, that defendants' conduct presents questions of fact and law common to the classes, and that the questions common to the members of the purchaser class and proxy fraud class predominate over the individual questions. Defendants argue only that (a) the class representatives are atypical and inadequate and (b) the questions common to the members of one of the proposed classes, the "contract" class, do not predominate over the questions affecting only individual members. These issues are discussed separately, in reverse order.

## I. The Contract Class

█ Plaintiffs claim that when defendants proposed to auction or buy Hills if elected to the Hills board, they made a contractual offer which plaintiffs accepted by voting for them and their nominees. Defendants argue that resolution of those common law contract claims will require determinations of facts particular to each plaintiff, including which statements each plaintiff saw, whether each plaintiff understood those statements as a contractual offer, what terms each plaintiff thought the offer presented, and whether each plaintiff meant to accept the offer by voting for Dickstein's nominees.

However, the contract claim, as asserted in the complaint, does not purport to rely on those facts. It does not allege that plaintiffs

* Plaintiffs propose to exclude from those classes the defendants "and members of their immediate families and their affiliates, partners, successors and assigns." (Plaintiffs' Notice of Motion at 2.)

understood the statements as an offer, or even saw the statements at all. It alleges:

In stating that Dickstein would pay $27 per share for all of Hills stock in the event the Dickstein Nominees were elected, Dickstein made a contractual offer which members of the Contract Class accepted by voting their shares for the Dickstein Nominees.

(Amended complaint at ¶ 82.)

Plaintiffs suggest in their brief that the subjective state of mind of the individual plaintiffs is irrelevant, and that under the circumstances plaintiffs' reliance on the offer may be presumed. (Plaintiffs' Reply Br. at 43–44.) The class they propose thus includes all who voted for defendants and their nominees, and is not limited to those who were solicited by defendants.

Under plaintiffs' theory, resolution of the contract claims may not require the individual factual determinations claimed by defendants. Accordingly, the predominant issues at this stage are common to all class members: whether defendants' statements constituted an offer and whether plaintiffs accepted that offer by voting for defendants' nominees. A class action is the superior method for resolving those common issues.

Whether plaintiffs can maintain their claim without proving that each individual plaintiff who voted for defendants' nominees saw, understood, and relied on defendants' statements as an offer is a question not to be determined on plaintiffs' motion for class certification. "Class certification motions are not subject to the same standards as motions for dismissal for failure to state a claim or for summary judgment." *Sirota v. Solitron Devices*, 673 F.2d 566, 571 (2d Cir.), *cert. denied*, 459 U.S. 838, 103 S.Ct. 86, 74 L.Ed.2d 80 (1982); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178, 94 S.Ct. 2140, 2153, 40 L.Ed.2d 732 (1974) (" 'In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.' ") (quoting *Miller v. Mackey Intl., Inc.*, 452 F.2d 424, 428 (5th Cir.1971)). Defendants have not moved to dismiss the contract claim. If they later establish that

the claim requires individualized proof and that such proof will predominate over the common issues in such a way as to make the class action unmanageable, the class can be de-certified or modified as appropriate at that time.

## II. Whether the Class Representatives are Adequate and Typical

Plaintiffs propose Jeffery Cross as a representative for all three classes, and propose four additional representatives for the purchaser class: Leslie Susser, Mitchell Dobies, Sidney Cohen, and Linda Garibaldi. Defendants argue that each of those proposed representatives is atypical and inadequate.

 The typicality requirement "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir.1992), *cert. dismissed*, 506 U.S. 1088, 113 S.Ct. 1070, 122 L.Ed.2d 497 (1993). "While it is settled that the mere existence of individualized factual questions with respect to the class representative's claim will not bar certification, class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation," because "there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it." *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir.1990) (internal citations omitted), *cert. denied*, 498 U.S. 1025, 111 S.Ct. 675, 112 L.Ed.2d 667 (1991).

 "[A]dequacy of representation is measured by two standards. First, class counsel must be qualified, experienced and generally able to conduct the litigation. Second, the class members must not have interests that are antagonistic to one another." *In re Drexel*, 960 F.2d at 291 (internal quotation marks omitted).

Defendants do not challenge plaintiffs' counsel. They argue that the proposed class representatives have atypical claims, are sub-

ject to unique defenses, and have interests antagonistic to the class.

## A. Jeffery Cross

■ Defendants argue that Jeffery Cross's deposition testimony shows that his claim is atypical because it differs from the claim asserted in the complaint. Comparison of his testimony with the complaint fails to support that.

Defendants claim that Cross admitted that Dickstein disclosed its expectation that Hills' board would not go through with the proxy contest and would auction Hills instead. That disclosure does not clearly contradict the complaint, which does not allege that defendants concealed that expectation. It alleges, more broadly, that defendants concealed that "it was Mark Dickstein's expectation that Dickstein would never effectuate its Proposal." (Amended complaint at ¶ 67.) Even if defendants expected the prior Hills board to auction Hills, that does not show that they would have expected never to effectuate their proposal; they could have effectuated it by offering to buy Hills at that auction.

Nor is any serious inconsistency with the complaint apparent in Cross's testimony (1) that certain "highly confident" letters, which Dickstein had obtained from NatWest Bank regarding financing for Dickstein's proposed purchase of Hills, were not a "major issue" for him because he "was convinced that Dickstein could find financing someplace other than NatWest," and (2) that even without those letters he would have voted for Dickstein's nominees in the proxy election. (Cross dep. at 207–08, 178.) The complaint does not allege that those letters were, in themselves, material. Rather, it alleges that Dickstein concealed material information relating to those letters, to wit, that it had assured NatWest that it "was 'absolutely not' 'morally' or 'reputationally' committed to underwrite the full transaction." (Amended complaint at ¶ 67(a).) What Cross testified were not a "major issue" were the letters themselves, not the information defendants concealed.

Defendants also claim that Cross's reliance on Dickstein's statements is subject to unique defenses because he said he generally distrusts management, and acknowledged reading various statements by Dickstein which, according to defendants, show that the offer was qualified. Those defenses are not unique. His distrust of management is not unusual evidence of non-reliance that is likely to distract attention from other class members' claims. Whether the statements he read made clear that defendants' offer was qualified is a central, not atypical, issue in this action.

Defendants next argue that Cross is an inadequate class representative because he made inconsistent and unbelievable statements that show his lack of credibility and angry statements that show his hostility toward defendants. Regarding his credibility, it is sufficient to observe that the statements cited by defendants do not reveal any clear, critical inconsistency sufficient to make Cross an inadequate class representative. *Contrast Kline v. Wolf*, 702 F.2d 400, 403 (2d Cir.1983) (where "plaintiffs' testimony on an issue critical to one of their two causes of action was subject to sharp attack, the district court reasonably concluded that their credibility in general was sufficiently in doubt to justify denying them a fiduciary role as class representatives with respect to both claims"). Nor does his testimony reveal a hostility towards defendants that is so severe or unrelated to the events at issue as to make his interests antagonistic to those of the class. *See Lewis v. Goldsmith*, 95 F.R.D. 15, 22 (D.N.J.1982) ("Plaintiff's natural pique upon discovering his financial setback does not serve as a bar to his representation of the class proposed in this action.").

Finally, defendants contend that Cross's purchase of Hills stock after Dickstein's announcement that it would not buy Hills subjects him to a unique defense, because it raises an inference that he would have purchased the stock even if he had known that Dickstein would not buy Hills. However, defendants have not convincingly explained why that inference arises here, where the purchase was made not directly after the announcement but three months later, in October 1995, and Cross said he made the purchase because he felt Dickstein would be

"forced to make good on his deal." (Cross dep. at 28–29.)

### B. Leslie Susser

■ Defendants argue that Susser is subject to a unique defense because he is a "professional plaintiff" who is involved in seven or eight securities class actions or derivative suits, six of which have been filed since 1994 and three of which were allegedly withdrawn as meritless, and who bought only 100 shares of Hills stock at a cost of about $2300 for a portfolio worth more than $1 million. They argue that those facts raise an inference that his purchase was based on his interest in securing a position as class representative, and that he therefore did not rely on the defendants' public statements or on the integrity of the market price, which plaintiffs claim was artificially high as a result of those statements.

Defendants offer no evidence regarding the way he became involved in those litigations or the circumstances of his purchase of Hills stock. The size of his purchase is not so minimal and the fact of his involvement in other securities litigations is too speculative, without more, to show that he is subject to a strong and unique defense of non-reliance that "threaten[s] to become the focus of the litigation." *Gary Plastic*, 903 F.2d at 180.

### C. Mitchell Dobies

■ Defendants argue that Mitchell Dobies' deposition testimony shows that his claim differs from the section 10(b) claim alleged in the complaint on behalf of the purchaser class, for which he seeks to be a representative. However, his testimony that he understood that a "highly confident" letter is not a guarantee does not facially conflict with the complaint, which does not allege that those letters were themselves a guarantee. Nor does his testimony that he understood that all corporate deals are subject to financing genuinely conflict with the complaint, which itself vacillates, alleging that "Dickstein imposed no conditions for its proposal" (Amended complaint at ¶ 4) but also alleging that Dickstein stated that its proposal was "subject to obtaining financing for the acquisition (and 'other standard conditions')."

(*Id.* at ¶ 36.) Moreover, his testimony on this point does not obviously conflict with the section 10(b) claim, which does not appear to rest on the premise that the proposal was not subject to financing; rather, it asserts that Dickstein's proposal was subject to other conditions: non-payment of certain moneys by Hills and finding a suitable purchaser for Hills. (*Id.* at ¶¶ 67, 78.) Even if Dobies' understanding that corporate deals are subject to financing undermines his claim of reliance on Dickstein's proposal, defendants have not shown that his understanding is likely to be so uncommon as to make that non-reliance defense atypical and unique.

Defendants also contend that Dobies is an inadequate class representative because he assaulted a contractor in a business dispute in 1989 and, in connection with that assault, later pleaded guilty in New Jersey to "theft of services." Because that long-past incident is related neither to his conduct in purchasing Hills stock nor to his character as an investor, it does not subject him to a serious defense that threatens to divert the focus of the litigation from the substance of the claims. Nor does any such threat arise from his arrest for unidentified "kid stuff" almost thirty years ago.

### D. Sidney Cohen and Linda Garibaldi

■ Defendants contend that Sidney Cohen and Linda Garibaldi cannot show that they relied on defendants' representations because they bought Hills stock solely on their brokers' recommendations. Even if defendants can maintain that defense, *see Panzirer v. Wolf,* 663 F.2d 365, 368 (2d Cir.1981) ("[T]he fact that plaintiff must trace her reliance on defendant's alleged fraud through the reactions of third parties does not vitiate her claim under 10b–5."), *vacated as moot,* 459 U.S. 1027, 103 S.Ct. 434, 74 L.Ed.2d 594 (1982), they have not shown that the defense is unique to Cohen and Garibaldi. "Reliance on third parties such as investment counselors or knowledgeable family members is likely to be typical, rather than atypical, of the circumstances under which a substantial number of class members purchased their stock." *Kronfeld v. Trans World Airlines, Inc.,* 104 F.R.D. 50, 53 (S.D.N.Y.1984).

### E. Other class members

Defendants argue that even if the proposed class representatives understood Dickstein's statements as a commitment to buy or auction Hills, those understandings are atypical because the actual class members did not understand those statements in that way. In support, defendants have submitted affidavits from persons who were affiliated with two of the largest shareholders of Hills during the 1995 proxy election. Those persons, who are friends of Mark Dickstein, state that they were not aware that Dickstein made any offer to Hills shareholders that was a binding commitment to buy Hills.

■ Whether the views expressed in those statements are held by the actual members of the classes defined by plaintiffs cannot be determined at this stage. That the claims asserted on behalf of those classes and the claims of the proposed class representatives stem from the same series of public statements made by defendants is enough to satisfy the typicality requirement, which is usually met where "it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented." *Robidoux v. Celani*, 987 F.2d 931, 936–37 (2d Cir.1993).

### CONCLUSION

Plaintiff's motion for an order certifying three classes of plaintiffs, as described above and with the representatives they propose, is granted.

So ordered.