80 N.J. Super. 427 (1963)
194 A.2d 11
FRATER CORPORATION, APPELLANT,
v.
STATE OF NEW JERSEY, DIVISION OF TAX APPEALS, DEPARTMENT OF THE TREASURY AND CITY OF NEWARK, RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 16, 1963.
Decided October 3, 1963.
*428 Before Judges GAULKIN, LEWIS and LABRECQUE.
Mr. Milton Lowenstein argued the cause for appellant (Messrs. Kristeller, Zucker, Lowenstein & Cohen, attorneys).
Mr. Saul A. Wolfe argued the cause for respondent City of Newark (Mr. Norman N. Schiff, Corporation Counsel of the City of Newark, attorney; Mr. Wolfe, of counsel and on the brief).
*429 Mr. Arthur J. Sills, Attorney General of New Jersey, attorney for respondent Division of Tax Appeals, filed a statement in lieu of brief pursuant to R.R. 1:7-4(b) (Mr. Alan B. Handler, of counsel).
The opinion of the court was delivered by LABRECQUE, J.S.C. (temporarily assigned).
Frater Corporation appeals from a judgment of the Division of Tax Appeals determining the assessment on its real property designated as 837-839 Broad Street, Newark, New Jersey, for the year 1961.
For the year in question Frater had appealed to the Essex County Board of Taxation from an assessment of land, $104,400; improvements, $23,300; total, $127,700. The County Board affirmed. An appeal to the Division of Tax Appeals resulted in a reduction to land, $86,000; improvements, $17,400; total, $103,400, based upon a finding that the true value of the property was land, $172,000; improvements, $34,700; total, $206,700. The parties agree that a 50% common level was applicable for the year in question. The appeal to us seeks a reversal of the Division's refusal to grant a greater reduction.
The matter was heard before a single member of the Division pursuant to N.J.S.A. 54:2-41.1. At the hearing no witnesses were called, the parties stipulating that the case should be determined on the basis of the written appraisals prepared by the experts for the taxpayer and the city. The attorney for the city also requested the commissioner hearing the case to take into consideration the Division's decision in the 1959 case involving the same property.
In 1959 the same premises had been assessed at land, $122,000; improvements, $25,000; total, $147,000. On appeal to the county board, a reduction to land, $97,500; improvements, $25,000; total, $122,500 was ordered. The city's appeal to the Division resulted in an affirmance. Since the common level for 1959 appears to have been 70%, the *430 reduced assessment for that year was apparently premised upon a total true value of $175,000.
The property under appeal consisted of a commercial plot located between Branford Place and William Street, having a frontage on Broad Street of 45 feet, a depth of 171 feet and a rear frontage of 44 feet on Treat Place. The improvements consisted of two contiguous buildings, the first and more modern one, which fronted on Broad Street, being two stories in height and 60 feet deep, and the second or older building, fronting on Treat Place, being four stories high and 88 feet deep. The upper floors of the latter were not being utilized on the assessing date, but the ground floor had been altered and was being used as a work-room for one of the Broad Street tenants.
In the 1959 appeal the commissioner who heard the case held that the 45 feet of Broad Street frontage had a value of $2,800 per front foot, or $126,000; that the land fronting on Treat Place had a value of $7,700, and that the fair rental value of the premises was $30,300 annually as of the assessing date (October 1, 1958). The same commissioner heard the 1961 appeal. While he found the rental value to be the same, he determined that the parcel should be valued as a unit and that, so regarded, it had 61 1/2 effective front feet on Broad Street which he valued at $2,800 per foot, or $172,000. The difference between the Division's land valuation in 1959 and that currently under appeal is asserted by the appellant to be the result of an arbitrary and improper method utilized by the commissioner in arriving at the 1961 value. Appellant contends that since the unit-foot value was the same for both years and the common level for 1961 was conceded to be 50%, the land assessment should have been reduced to 50% of the 1959 land value, or $66,850. The assessment for the improvements is not in dispute.
A hearing before the Division of Tax Appeals is a de novo one in which the ultimate fact to be found is the true value of the property under appeal. Passaic v. Gera Mills, 55 N.J. Super. 73 (App. Div. 1959), certification *431 denied 30 N.J. 153 (1959). This determination frequently calls for the testimony of experts in the field of land valuation. The task of coordinating and evaluating such testimony has been expressly committed to the Division. The weight to be accorded to the testimony of such experts is a matter left to the reasonable judgment of the Division, and that judgment, when supported by substantial evidence, will not be disturbed. Weston Electrical Instrument Corp. v. Newark, 11 N.J. Super. 493, 496 (App. Div. 1951); Passaic v. Gera Mills, supra, 55 N.J. Super., at p. 89.
The appellant argues that the method utilized in arriving at the value of its land was arbitrary and improper because it did not follow the method provided by Rule 10 contained in the Real Property Appraisal Manual for New Jersey Assessors (1955). Said Rule 10 provides:

"BUSINESS THROUGH LOT
To find the value of a through lot with two street fronts, compute from the high-value street to the standard depth or from half the depth whichever is greater and from the low-value street for the remaining depth, and add together for the total value."
The manual in question was issued by the Local Property Tax Bureau of the Division of Taxation on December 1, 1955 and contains extensive data applicable to the assessment of real property. It bears the following foreword:
"This real property manual is for the guidance of those whose duty it is to apportion fairly the very heavy burden of proper taxes in New Jersey.
It is universally recognized that there is no substitute for a good initial assessment, one resulting from the exercise of sound judgment by a person qualified to make it, uninfluenced by personal considerations or political expediencies. * * *
Primarily, the fair apportionment of the burden of local taxes is the responsibility of the assessor. This manual has been prepared in the belief that it will assist him in the discharge of his difficult task of valuing, on a sound and uniform basis, the many types of real property to be found in his district. * * *"
It is conceded that the Local Property Tax Bureau is a department of the Division of Taxation. N.J.S.A. *432 54:4-26 requires assessors to follow such forms and methods as may be prescribed by the Director of the Division of Taxation, including, without limitation, a listing of the use of each parcel assessed, the taxable value of the land, of the buildings and improvements separately on each parcel, and the sum of such separate values. No case is cited, however, and we have been unable to find any, which holds that the manual in question prescribes the only method to be followed in arriving at the true value of real estate for purposes of taxation.
In the performance of their function, assessors are required to determine the full and fair value of each piece of property based upon what it would sell for at a fair and bona fide sale. Passaic v. Gera Mills, supra, 55 N.J. Super., at p. 83; see N.J. Const., Art. VIII, § I, par. 1; N.J.S.A. 54:3-13, 22; N.J.S.A. 54:4-1. Over the years and as the result of experience, various rules and formulae calculated to determine true value have been adopted and followed. The results achieved under them have been affirmed by our courts in many instances. Some of them have been embodied in prior manuals for the guidance of taxing authorities. See A Manual of Practice in Appraising Real Estate. (N.J. State Tax Dept. 1933). No special formula for measuring fair value has been required or excluded. Riverview Gardens, Section One v. North Arlington Borough, 9 N.J. 167, 175 (1952).
We are satisfied and we hold that the Real Property Appraisal Manual for New Jersey Assessors promulgated by the Division of Taxation in 1955, while intended to serve as a guide for those charged with the assessment of real property, was not intended to preclude the use by the Division of Tax Appeals of other established and accepted means of arriving at the true value of real property.
Nor are we in accord with the appellant's contention that the manual in question proscribes the method followed by the Division here. While Rule 10, when taken out of context, may seem to call for the result appellant seeks, our *433 examination of the manual reveals other relevant matter justifying the method of valuation used by the commissioner. Thus, in summarizing the steps to be taken in land appraisal, at page 20, the manual reads:
"The main steps for appraising urban lots and parcels are summarized as follows:

* * * * * * * *
(6) Establishing the final unit front foot values, unit acreage values, and unit square foot values where applicable.
(7) Determining individual lot and parcel values through application of unit foot values adjusted for depth, corner influence, shape and size of lots and parcels." (at p. 20; emphasis added)
Rule 1 therein, which provides the basic formula for determining land valuation, calls for the adjustment of unit foot values according to depth of the lot. p. 28. A table of depth factors is included. p. 26. According to the table, a lot 170 feet in depth such as the one sub judice, would call for the use of a factor of 1.27. An additional adjustment factor is referred to in the manual as alley influence, an increment applicable to lands adjacent to public alleys. p. 27. The manual suggests an upward adjustment of 5% for lands bordering on rear alleys. In following the manual, the question of whether Rule 10 or Rule 1 adjusted for depth and alley influence shauld have been applied could well depend upon whether Treat Place was considered as an alley or a business street.
Steinberg, the expert for the city, appears to have followed the Rule 1 method referred to in arriving at his opinion that appellant's lot had 61.42 effective front feet, the figure adopted by the Division. While Rachlin, the appraiser for the taxpayer, did not follow it in appraising the subject premises, he did so in analyzing the sales of the two adjacent properties which he cited in his appraisal as comparable. Both of these extended from Broad Street 172 feet back to Treat Place. Thus, in analyzing the sale of 835 Broad Street, which had a frontage of 22 feet on Broad Street, he allowed an additional 5.21 feet for depth and an additional 10% (instead of 5% as suggested in the manual) for Treat Place *434 influence. In analyzing the sale of 853 Broad Street, which had a frontage of but 20 feet on Broad Street, he allowed an additional 4.72 feet for the extra depth and an additional 10% for Treat Place influence. In support of the use of this method was the fact that there was no evidence of any commercial use being made of the Treat Place frontage, that the income was entirely derived from the Broad Street frontage, that all of the buildings were devoted to the purposes of the Broad Street tenants, that the buildings appear to have been valued by both experts as part of the Broad Street frontage, and that the front building as well as a portion of the rear building were located on what would be the Broad Street end of the lot.
We find no merit to the appellant's contention that the tax history was not given consideration, and that upon a proper consideration thereof the 1959 valuation should have been followed. There can be no doubt as to the admissibility of the tax history here. Camden County Realty Co. v. State Board of Tax Appeals, 131 N.J.L. 132 (Sup. Ct. 1943). But aside from the 1959 decision of the Division, no tax history was introduced. We are without knowledge as to the 1960 assessment or its disposition. We are further advised that subsequent to the 1959 assessing date, a revaluation took place in the City of Newark. The probative value of the 1959 assessment was thus greatly reduced. In short, we cannot say that the Division erred in not following its 1959 valuation. Each annual assessment is a separate entity, distinct from the assessments of previous years. Aetna Life Insurance Co. v. City of Newark, 10 N.J. 99, 103 (1952). In any event, the unit foot value adopted by the Division is the same as that for the year 1959, the only difference being the manner of its application to the lot in question. In the exercise of its expertise the Division determined to follow the method used by the city's expert and concurred in, in part at least, by that of the appellant. We perceive no error in its having done so.
The judgment of the Division of Tax Appeals is accordingly affirmed.