ANDREW, P.J.T.C.
The present motion by Monroe Township seeks a determination by this court as to the correct filing fee or fees it must pay to have the Tax Court Management Office receive and file two complaints challenging a total of 2,390 separate condominium assessments for 1996 in two condominium complexes in Monroe Township (hereinafter Monroe).
Monroe submitted two complaints to the Tax Court Management Office on August 28, 1996 for filing. One of the complaints challenged the 1996 assessments of 1,150 condominium units located in a planned retirement community condominium complex known as Clearbrook. The second challenged the 1996 assessments of 1,240 condominium units located in another planned retirement community known as Rossmoor. With each complaint Monroe delivered a check of $175 to cover the cost of the filing fee. The Tax Court Management Office determined that the submitted filing fee was deficient because it was not in accord with R. 8:12(c)(2) which requires a small claims filing fee of $25 for each separately assessed condominium of each separate condominium *264 owner.[1] This would require filing fees in the amount of $59,750 for both complaints (2,390 x $25 = $59,750).
On August 29, 1996, the Management Office, by letter, notified counsel for Monroe of the deficient filing fee and that the two complaints would be marked “Received but not filed,” pursuant to R. l:5-6(c). The notice informed counsel that if the appropriate filing fee were submitted within ten days of the date of the notice, filing would be deemed to have been made on the date the complaints were originally submitted, ie., August 28, 1996, but if the correct fee were submitted after ten days, the filing date would be the date the Management Office received the appropriate filing fee.
Monroe did not pay the fee requested by the Management Office. Instead, on September 9,1996, it filed the present motion seeking an order: (1) relaxing R. 8:12(c)(2) with respect to filing fees pursuant to R. 1:1-2 (the relaxation rule), (2) consolidating the two complaints submitted by Monroe since they involve common questions of law and fact and (3) staying the ten-day period for correcting filing deficiencies until there is a final determination of the present motion.
The Director of the Division of Taxation has requested permission to intervene in this proceeding for two purposes: first, to oppose the request of Monroe that it be excused from the payment of the required filing fees and second, to defend the assessments which Monroe is seeking to have reduced on appeal. Monroe does not oppose the Director’s application for intervention primarily because the Director has statutory oversight authority of local property tax assessments. Even more important, however, is the fact that none of the affected condominium owners in this case has any reason to oppose Monroe, since Monroe seeks to benefit all of the owners with an assessment reduction. It is appropriate in our adversarial system, to permit the Director to intervene to defend the action of Monroe’s previous assessor in *265 increasing a number of assessments for tax year 1996 in order to protect the integrity of the tax system and to defend the rights of all of the other taxpayers in Monroe who would have to absorb any assessment reductions in this case. Therefore, the Director’s motion to intervene in this matter is granted.
In order to have a full understanding of the motion presently before this Court, it would be helpful to review the factual circumstances giving rise to the controversy involving the assessments of the 2,390 condominium units at issue.
The papers submitted by Monroe and the Director of the Division of Taxation reveal that Clearbrook is a residential planned retirement community of condominiums consisting of 2,026 units with 29 basic models, while Rossmoor, also a planned retirement community, consists of 2,303 condominium units with 45 different models. Apparently, the current assessor’s predecessor increased the assessments of 2,443 condominium units in the Clearbrook and Rossmoor complexes for tax year 1996.
Monroe’s current assessor was appointed on March 25, 1996, approximately three months after the date the tax assessment lists are to be submitted to the county tax board for examination, revision and correction for tax year 1996. See N.J.S.A. 54:4-35 (assessment lists to be submitted to county board by January 10 of the tax year) and N.J.S.A. 54:4-46 (county board to examine, revise and correct tax lists). As soon as the current assessor took office, he received a number of telephone calls and personal visits from homeowners in the Rossmoor and Clearbrook condominium complexes complaining about increases in their local property tax assessments for tax year 1996.
The current assessor indicated that he reviewed the assessments that had been increased by his predecessor because of the inquiries that he had received. In his review, he concluded that his predecessor had made a number of significant errors including: (1) different housing units, selling at different prices, were identically assessed, (2) assessment of identical units were not consistently changed, (3) some changes in assessment were based upon incorrect models, (4) discrepancies between the location of models *266 listed by the previous assessor and those listed by the builder, (5) alteration of assessments in units despite sale data showing the units to be within an acceptable and fair assessment variation range, which, therefore, should have been left unaltered; and (6) failure of the previous assessor to conduct a field inspection to determine change in value of units, but instead relied upon documentation already contained in the assessor’s office.
Monroe’s present assessor candidly admits that he was unable to make a specific determination of the propriety of the change in assessment with respect to a significant number of the properties, but he was, nonetheless, able to conclude that an appeal to the county board should be filed.
Accordingly, Monroe filed an appeal with the Middlesex County Board of Taxation on March 29, 1996 with respect to 2,443 individually assessed condominiums in Clearbrook and Rossmoor that had assessment increases from 1995 to 1996.
In accordance with N.J.A.C. 18:12A-1.6(c), the county tax administrator permitted Monroe to file the 2,443 appeals in a single petition with an attached schedule listing each separate condominium. The relief claimed by Monroe was to have the county board reduce all of the increased assessments to the level of the 1995 assessments.
During the hearing process, counsel for Monroe moved to have three of the five county tax commissioners recuse themselves to avoid an alleged appearance of impropriety. The three commissioners acquiesced in Monroe’s request leaving only two commissioners to determine the 2,443 appeals. Since N.J.S.A. 54:3-25 requires a quorum of three commissioners to make determinations, the county tax board invoked a rule of necessity to call back one commissioner. The resulting quorum of three commissioners, however, could not agree with respect to any of the assessments under appeal. Two had voted in favor of assessment reductions and one voted for affirmance of the original assessments. Consequently, the county board entered 2,443 separate judgments affirming the original assessments.
*267 As a result of the county board’s denial of Monroe’s petition of appeal, Monroe attempted to file the two complaints at issue with the Tax Court Management Office. As previously indicated, one complaint appealed 1,150 county tax board judgments for condominiums in Clearbrook and the second appealed 1,240 county board judgments for condominiums in Rossmoor for a total of 2,390 assessment appeals. The papers submitted do not explain why Monroe elected not to appeal 53 of the county board judgments with respect to 53 of the condominiums located in Clear-brook and Rossmoor.
Monroe first contends that the decision of the Tax Court Management Office which required additional filing fees under R. 8:12(c)(2) was an incorrect interpretation of the filing fee requirements of R.8:12. It is Monroe’s position that under R. 8:12(a), all that Monroe must submit is $175 for each complaint.
The township maintains that it is not challenging the separate assessments placed on 2,390 individual condominium units, but rather is contesting the legality of a reassessment conducted by its previous tax assessor. Thus, the issue, according to Monroe, does not require valuation proofs as to each condominium, but only as to the propriety of the alleged reassessment. Monroe points out that R.8:12(a) requires that “a fee of [$175][2] shall be paid to the Tax Court upon the filing of a complaint or counterclaim except as hereinafter provided.” Emphasis added. The township then claims that there is no other provision in the rule to cover the present complaint, and therefore, its submitted filing fee of $175 for each complaint is sufficient under the filing fee rule. The argument is wide of the mark for a number of reasons.
First, the two complaints submitted by Monroe do not challenge any alleged illegal reassessment by the prior assessor, but rather seek to have the 1996 assessments on 2,390 condominiums reduced to the level of the 1995 assessments because of the alleged numerous errors made by the prior assessor in arriving at the *268 1996 increased assessments. The two complaints make no reference to an alleged invalid reassessment, but instead refer to individual assessments in the Clearbrook and Rossmoor condominium complexes. As the Director points out, Monroe’s complaints expressly make the traditional claim in local property tax cases that the assessments in question are “in excess of the common level prevailing in the municipality.”
As such, the two complaints filed by Monroe clearly fit within the language of R.8:12(c)(2) which provides, in pertinent part, for small claims:
“If a complaint ... in an action to review a real property tax assessment includes more than one parcel of real property separately assessed pursuant to the provisions of ... N.J.S.A. 46:8B-19 (Condominium Act), the filing fee shall be ... $25 for the first separately assessed parcel of property of each separate property owner . . . .
The rule is clear on its face and supports the determination of the Tax Court Management Office in its request of Monroe for the submission of additional filing fees. There is nothing in the language of the rule or its history which would permit this court to interpret the rule as suggested by Monroe.
Second, even assuming that Monroe’s challenge is to an alleged illegal reassessment which was limited to the condominium communities of Clearbrook and Rossmoor, Monroe overlooks the function and duties of a tax assessor, the nature of a proceeding in the Tax Court and the function of the Tax Court in its review of judgments of county boards of taxation.
Monroe insists that there is only one issue to be decided by this court and that is whether the prior assessor conducted and implemented an illegal reassessment. Therefore, according to Monroe there is no need for individual valuation hearings with respect to the 2,390 condominium units that were subjected to an increase in assessment for 1996.[3] As a consequence, the filing fee *269 should be $175 for each complaint. To begin with, if Monroe’s argument were correct there would be no need to file two complaints since each raises the alleged same issue, an illegal reassessment. More important, however, is that Monroe misperceives the role of the tax assessor. An assessor is not obliged to act as a caretaker of assessment lists between revaluations, relegated to maintaining and carrying forward from year to year the same assessments. The assessor has a statutory duty to scrutinize and adjust assessments as necessary in individual cases without a full municipal revaluation or reassessment. N.J.S.A. 54:4-23.
Our Supreme Court recognized this duty in Tri-Terminal Corp. v. Bor. of Edgewater, 68 N.J. 405, 346 A.2d 396 (1975) where it observed that:
The law calls for the separate assessment of each parcel annually at its true value on the assessing date. While practicalities obviously preclude most assessors reviewing every assessment line item every year, ... there should nevertheless be alertness to changed valuation factors peculiarly affecting individual properties in years between revaluations and requiring prompt revision of such assessments in fairness to the particular taxpayer or to the taxing district . . . . It should be obvious that, absent such attention, the carrying over of assessments each year from one general revaluation to the next is not the proper discharge of the assessor’s function.
[Id. at 413-14, 346 A.2d 396; see also Piscataway Assoc., Inc. v. Piscataway Tp., 73 N.J. 546, 551, 376 A.2d 527 (1977) ]
The Director maintains that Monroe’s prior assessor was, within our constitutional and statutory framework, simply being diligent in reviewing and revising assessments where appropriate. That, in and of itself, does not constitute a reassessment, as that term is understood by the assessing and appraisal community, much less an illegal reassessment.
Once the tax assessor established the property tax assessments pursuant to N.J.S.A. 54:4-23, those original assessments are entitled to a presumption of correctness. See Pantasote Co. v. Passaic, 100 N.J. 408, 412, 495 A.2d 1308 (1985). That presumption attaches to the quantum of each tax assessment and can only be overcome by cogent evidence, i.e., evidence which is definite, positive and certain in quality and quantity. Id. at 413, 495 A.2d 1308. In other words, it is not sufficient merely to introduce *270 evidence; the presumption stands until sufficient competent evidence is adduced to prove a true valuation different from the assessment. Aetna Life Ins. Co. v. Newark, 10 N.J. 99, 105, 89 A.2d 385 (1952).
Additionally, the presumption is not merely an evidentiary presumption that serves only as a vehicle to allocate the burden of proof. Instead, it is a principle in local property tax matters that presumes that governmental authority has been exercised correctly and in accordance with the law. Pantasote Co. v. Passaic, supra, 100 N.J. at 413, 495 A.2d 1308. The presumption accorded the original assessment then attaches to the determination of the county board when it is the determination of that body that is challenged in this court. See Byram Tp. v. Western World, Inc., 111 N.J. 222, 235, 544 A.2d 37 (1988).
N.J.S.A. 2B:13-3 provides that the “Tax Court shall determine all issues of fact and of law de novo.” The Appellate Division, on numerous occasions, has noted that, on an appeal to the Tax Court from a local property tax assessment, it is the function of the Tax Court to conduct a de novo hearing “in which the ultimate fact sought to be determined is the full and fair value of the property.” Weyerhaeuser Co. v. Closter Bor., 190 N.J.Super. 528, 541, 464 A.2d 1156 (App.Div.1983); Rabstein v. Princeton Tp., 187 N.J.Super. 18, 22, 453 A.2d 553 (App.Div.1982); Rek Investment Co. v. Newark, 80 N.J.Super. 552, 557, 194 A.2d 368 (App.Div.1963); Frater Corp. v. Tax Appeals Div., 80 N.J.Super. 427, 430, 194 A.2d 11 (App.Div.1963); Passaic v. Gera Mills, 55 N.J.Super. 73, 84, 150 A.2d 67 (App.Div.1959), certif. den., 30 N.J. 153, 152 A.2d 171 (1959). Also see Hackensack v. Rubenstein, 37 N.J. 39, 52, 178 A.2d 625 (1962) and N.J.S.A. 54:4-23. Moreover, the duty of this court to determine true value cannot be circumscribed by the manner in which a plaintiff elects to word its complaint. See Rek Investment Co. v. Newark, supra, 80 N.J.Super. at 557-58, 194 A.2d 368.
In response to Monroe’s present motion, the Director indicates that he intends to establish at trial that the increased assessments for 1996 were nothing more than a revision of only a small fraction *271 of the total number of assessments in the municipality for tax year 1996. The Director further maintains that the review, revision and maintenance of the 1996 tax list by Monroe’s prior assessor actually improved the quality and uniformity of assessments generally in Monroe. Based on the traditional function of this court and the position taken by the Director, it is inevitable that this court will be required to make individual determinations of value with respect to each of the 2,390 condominium units and then apply an appropriate ratio based on chapter 123 of the Laws of 1973, N.J.S.A. 54:51A-6. See Weyerhaeuser Co. v. Closter Bor., supra, 190 N.J.Super. at 537, 464 A.2d 1156 (App.Div.1983). There is no other way to determine the appropriate assessment for each condominium for tax year 1996. To simply restore the 1995 assessments as suggested by Monroe without valuation proofs would be an injustice to all of the other taxpayers in the municipality.
Each condominium must be considered on its own merits to determine whether the assessment falls above, or below, the common level range in order to warrant any adjustment in the assessment. N.J.S.A. 54:51A-6. This necessitates individual market value determinations even though condominiums are involved. As the Director so cogently observes, even condominium units of the same models can vary greatly in value and require independent factual analysis depending on a.variety of factors such as upgrades, condition, location, view and floor level. Thus, in whatever manner Monroe seeks to characterize its complaints, unquestionably, this court, of necessity, would have to proceed as it normally would in any challenge to a local property tax assessment and apply its judgment to valuation data submitted by experts in order to determine the fair market value of each condominium and then the appropriate assessment. Glenpointe Assoc. v. Teaneck Tp., 241 N.J.Super. 37, 574 A.2d 459 (App.Div.1990), certif. den., 122 N.J. 391, 585 A.2d 392 (1990). Interestingly enough, Monroe concedes that if this court has to hear specific proofs as to individual assessments then the Tax Court Management Office was correct in its assessment of filing fees.
*272 Third, again assuming that Monroe’s challenge is to an alleged illegal reassessment which was limited to the condominium communities of Clearbrook and Rossmoor, Monroe’s challenge requires this court to determine the appropriate assessment for each of the individual condominiums. Monroe’s current tax assessor has indicated in his certification that his predecessor made various errors, some of which related to certain condominium units while other errors related to other condominium units. In other words, all of the alleged errors did not affect each of the 2,390 condominiums in precisely the same manner. Monroe’s claim requires this court to review the alleged errors to determine if and how the errors affected the assessments of each individual condominium unit and, in the final analysis, to determine the correct assessment for each unit. This final analysis will necessitate an individual consideration of the true value and factual circumstances unique to each condominium.
Therefore, I conclude that the determination of the Tax Court Management Office was correct in its insistence that additional fees from Monroe are required by the applicable rule, 72.8:12(c)(2).
Next, Monroe asserts that if this court elects to apply the individual fee requirement of 72.8:12(e)(2), then the rule should be relaxed pursuant to 72.1:1-2 (general relaxation rule) because forcing Monroe to pay filing fees of $59,750 (2,390 units x $25 = $59,750) would be a clear injustice contrary to the public interest.
Preliminarily, I must ask whose public interest? It would not be in the public interest of all of the remaining taxpayers in Monroe to permit the prosecution of an action by the township that seeks to reduce the assessments of 2,390 condominium owners. Instead, it seems to be in the economic interest of 2,390 condominium owners to not only obtain a reduction in assessment without any effort on their part, but also to avoid the payment of any filing fees by these condominium owners either at the county board level or here at the Tax Court.
It seems appropriate at this point to indicate, without ruling on the issue, that there is some reason to question the standing of *273 Monroe to bring the present appeal. I say this because it would be unfair to require Monroe to pay the filing fees requested by the Tax Court Management Office and not alert Monroe to a perceived procedural deficiency in its ability to bring the present action. The statutory authority under which the appeal has been brought by Monroe is N.J.S.A. 54:3-21, which provides:
A taxpayer feeling aggrieved by the assessed valuation of his property, or feeling that he is diseriminated against by the assessed valuation of other property in the county or a taxing district which may feel discriminated against by the assessed valuation of property in the taxing district .,. may on or before April 1 appeal to the county board of taxation by filing with it a petition of appeal . . . .
[Emphasis added]
According to the statute, the taxing district may appeal if it is discriminated against by an assessment. The American Heritage Dictionary (2nd Coll.Ed.1982) defines the verb “discriminate” as “to act on the basis of prejudice” and the noun “discrimination” as “an act based on prejudice.” [at 404],
Here, the taxing district is not seeking to increase assessments but to reduce assessments. The question then is: how is a municipality discriminated against or prejudiced by assessments that are greater than the municipality believes they should be? The real parties in interest here are the taxpaying owners of the condominiums at issue who clearly have standing to challenge allegedly excessive assessments because they are aggrieved by the assessed valuations of their properties. The present case is not adversarial in nature because the property owners clearly will not resist an action that seeks to provide them with assessment reductions. This was revealed at the county board of taxation where none of the property owners appeared at the hearing. Thus, the present situation was not contemplated by N.J.S.A. 54:3-21 and, as far as I can determine from a reading of the statute, was not intended to provide the municipality with standing to seek reductions as opposed to increases in assessment.
Turning back to the issue presented by the township, Monroe contends that the appropriate authority for relaxing the fees *274 required by E.8:12(e)(2) can be gleaned from a reading of N.J.S.A. 22A:2-23 and, in turn, R.1:1-2.
N.J.S.A. 22A:2-3 provides:
The collection of any fee provided for by this chapter may be waived in particular circumstances by general rule of the Supreme Court or by special order of the Supreme Court, or by an order of any court made pursuant to authority granted by a rule of the Supreme Court.
In turn, R.1:1-2 provides:
The rules in Part I through Part VIII, inclusive, shall be construed to secure a just determination, simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay. Unless otherwise stated, any rule may be relaxed or dispensed with by the court in which the action is pending if adherence to it would result in an injustice . . . .
It is Monroe’s contention that, in accordance with N.J.S.A. 22A:2-23, our Supreme Court provided for a waiver of fees in R. 1:1-2 which permits a court to relax, or dispense with, the requirements of a rule if adherence to the rule would result in an injustice. Monroe maintains that to require it to pay an individual filing fee of $25 for each condominium assessment or a total of $59,750 for 2,390 condominium assessments would constitute a “clear injustice contrary to the public interest.”
In response, the Director first observes that the statutory authority for fees in the Tax Court is N.J.S.A. 22A:5-1 not N.J.S.A. 22A:2-3 as asserted by Monroe. N.J.S.A. 22A:5-1 provides:
a. The filing fee for commencement of proceedings in the Tax Court, other than the proceedings in the Small Claims Division, shall be the same as proceedings in the Superior Court, Law Division, except that a taxing district shall not be required to pay a filing fee upon the filing of a counterclaim or any responsive pleading.
b. Additional fees, the reduction or waiver of fees for particular classes of cases, and the fees for the Small Claims Division of the Tax Court, shall be established by the Rules of the Supreme Court.
c. No proceeding shall be heard by the Tax Court unless the fees are paid.
d. All fees shall be payable to the Clerk of the Tax Court for the use of the State, and shall not be refundable except as specifically provided by the Rules of the Supreme Court.
[Emphasis added]
*275 Clearly, the Director is correct in asserting that the appropriate statute for this court to initially consider is N.J.S.A. 22A:5-1 (Fees of Tax Court).
A fair reading of the Tax Court fee statute militates against the plea of Monroe for a waiver of fees. To begin with, part a. of the statute expressly provides that “a taxing district shall not be required to pay a filing fee upon the filing of a counterclaim or any responsive pleading.” That language demonstrates the fact that the Legislature considered a waiver of filing fees for taxing districts like Monroe and decided to limit the waiver to counterclaims and responsive pleadings but not with respect to complaints submitted for filing by municipalities. If the Legislature had intended a complete waiver of fees for municipalities it would not have used the limiting language.
Second, part b. of the statute provides for the “waiver of fees for particular classes of cases,” to be established by the Rules of the Supreme Court. Our Supreme Court has expressly provided for a waiver of filing fees for particular classes of cases in R. 1:13-2(a) and R. 8:12(d). R. l:13-2(a) specifically establishes a waiver of fees for indigents. Monroe does not claim that it meets the requisites of this rule. R. 8:12(d) expressly establishes an exemption for filing fees in the following classes of cases:
(1) No fee shall be paid upon the filing of a complaint within the small claims jurisdiction in an action where the sole issue is eligibility for a homestead tax rebate or a senior citizen’s or veteran’s exemption or deduction.
(2) No fee shall be paid by a taxing district upon the filing of a counterclaim or any responsive pleading.
The Supreme Court has, therefore, adopted provisions for the waiver of fees for particular classes of cases. It is in this sense that N.J.S.A. 22A:5-1 must be construed. If R. 1:1-2 were to be considered as a rule allowing a waiver of filing fees it would run counter to the legislative directive that the waiver be for particular classes of cases and not on a case-by-case basis. Monroe’s reading of R. 1:1-2’s relaxation provisions would open filing fee waivers to any and all matters in the Tax Court, on a case-by-case basis. That was not the intent of the Legislature in enacting N.J.S.A. 22A:5-1(b) nor the intent of the Supreme Court with respect to *276 establishing rules for the waiver of fees in particular classes of cases. Moreover, the statute calls for the waiver of fees to be established by the Rules of the Supreme Court. One could not reasonably argue that in adopting R. 1:1-2 the Supreme Court established a waiver of fees nor could it be argued that R. 1:1-2 provides for a waiver of fees in a particular class of cases.
It is also noteworthy that our Supreme Court, in establishing a waiver of fees in R. 8:12(d)(2), followed the legislative direction provided in N.J.S.A. 22A:5-1(a) that, with respect to municipalities, fees are waived only as to counterclaims and responsive pleadings. This illustrates that the Court considered a total waiver of fees for municipalities yet limited such waiver to counterclaims and responsive pleadings. The obvious inference to be drawn from R. 8:12(d)(2) is that municipalities must pay the mandated filing fees when seeking affirmative relief through a complaint in the Tax Court.
Given the care with which our Supreme Court has established rules for the waiver of fees in particular classes of cases, this court must refrain from generously granting waivers under the unspecific “catch-all” R. 1:1-2. This hesitation to grant relief under R. 1:1-2 is bolstered by the fact that the parties and the court have not been able to discover one ease in this State in which a waiver of filing fees has been granted under R. 1:1-2. As the Law Division observed in Pleasantville Taxpayers v. Pleasantville, 111 N.J.Super. 377, 380, 382, 268 A.2d 342 (Law Div.1970), aff'd, 115 N.J.Super. 85, 278 A.2d 229 (App.Div.1971), certif. den., 59 N.J. 268, 281 A.2d 530 (1971), albeit under a different filing fee statute, there is no authorization for waiving filing fees “where more than one property is involved and the properties have separate owners.”
Other than cases of indigency and the specific exemptions set out in R. 8:12(d), the court rules and decisional law do not lend themselves to the exercise of unfettered discretion by trial judges in eliminating or reducing filing fees clearly established by court rule.
*277 Nevertheless, Monroe insists that an injustice will occur if it is required to pay the filing fees specified in R. 8:12(c)(2). The Director, however, in response asserts that there is simply no injustice in this case that would warrant waiver of the nominal filing fee of $25 for each of the 2,390 small claims real property tax appeals.
The fee or fees established in R. 8:12(c)(2) were not intended to be an obstacle by the Supreme Court. Instead, this regulatory scheme was intended to provide for ready access to appropriate determinations of contested local property tax assessments. This scheme contemplates that the action of the court system is a service which should be paid for, at least, in part, by those who seek to use it. It reflects a judgment that the costs of exercising a legal right should not be borne entirely by the State. There is no right on the part of a municipality that involves an obligation on the part of the State to subsidize the full costs of providing a forum to hear a local property tax dispute involving 2,390 different condominiums.
Monroe’s position is that a municipality has the fundamental right to what, in essence, would be a virtually free forum for litigating the appropriateness of 2,390 separate assessments despite the very real costs to the State of providing that service.
If a taxpayer who owned the same number of units in a condominium complex wanted to challenge the prior assessor’s action in this case based on the same reasons advanced by the municipality in this case, it would seem that, if the municipality is correct in its claim that the fees required by R. 8:12(c)(2) should be abated under the general relaxation principle of R. 1:1-2, then the individual taxpayer would be entitled to the same dispensation. I doubt, however, that any court would seriously consider such a request.
If all 2,390 owners in this case wanted to challenge their individual 1996 assessments in this case they could have obtained the services of one lawyer who, pursuant to R. 8:3-5(a)(4), could have filed one eomplaint challenging each separately assessed condominium in separate counts in the Rossmoor complex and one *278 complaint challenging each separately assessed condominium in separate counts in the Clearbrook complex. As the comment to R. 8:3-5(a)(4) makes perfectly clear, however, “each separate count requires a separate filing fee.” Pressler, Current N.J. Court Rules (1997), Comment R. 8:3-5(a)(4).
As the Director points out, if the taxpayers whose properties are under appeal had submitted the appeals themselves each owner would have had to pay the nominal filing fee of $25. The Director asserts that there is no reason to waive the fee simply because the municipality has decided to expend public funds to seek to obtain lower assessments for a selected group of taxpayers who have decided not to file their own appeals. The filing fees should be the same for the municipality as they would be for the individual taxpayers. There is no injustice in requiring this kind of equality of treatment.
Additionally, it must be noted that if the municipality attempted to file the two complaints asserting that the assessments were flawed for the very reasons specified in their complaints, but contending that the assessments should be increased in each case instead of reduced, there would be no warrant for excusing the required filing fees. Why should the direction of the relief sought (increase or reduction) control the amount of the required filing fees?
The Director cogently observes that the taxpayers who stand to benefit from lowered assessments could have filed their own appeals. Nothing compelled Monroe to seek to prosecute tax appeals for individual taxpayers. Monroe’s decision to do so, however, should not result in the generality of taxpayers in this State being called upon to pay the cost.
A litigant who seeks to have a court relax the operation of a court rule, must establish by a preponderance of the credible evidence that the application of a court rule creates an injustice that warrants an application of R. 1:1-2. State v. Mitchell, 126 N.J. 565, 579, 601 A.2d 198 (1992). Monroe has failed to demonstrate that the imposition of a $25 filing fee for each contested assessment in this case would result in an injustice.
*279 There are a few other points raised in Monroe’s brief that require some brief discussion. Monroe asserts that the fee required by R. 8:12(c)(2) constitutes an impermissible charge or tax because it is wholly unrelated to the service to be rendered by the court. As previously indicated, the complaints submitted by Monroe and the defense to be presented by the Director would require, at minimum, valuation hearings for 2,390 separate condominiums and ultimately the issuance of judgments for each of those Tax Court determinations. The filing fee of $25 for each separately assessed parcel is more than modest when one considers the administrative costs involved.
Monroe points to the case of Murillo v. Bambrick, 508 F.Supp. 830 (D.N.J.1981) as support for its argument that the filing fee in this case does not comport with the costs expended by the court system. In Murillo, the United States District Court invalidated an extra $50 trial fee imposed in matrimonial cases which the court found was not intended to finance additional clerical time spent on such cases. This additional fee was not imposed on any other class of cases. The Director asserts that the Murillo case is irrelevant because the filing fee in the present case is not imposed solely on one class of cases but is imposed equally on all appeals of separately assessed property, and Monroe does not challenge the underlying validity of small claims filing fees. I agree that Murillo is not relevant to this case. Additionally, and perhaps more important, the decision in Murillo by the district court was reversed by the Circuit Court of Appeals for the Third Circuit. See 681 F.2d 898 (3rd Cir.1982).
Monroe also relies upon the case of Lewis v. Goldsmith, 95 F.R.D. 15 (D.N.J.1982) in arguing that, in class action lawsuits, only one filing fee is required. As the Director points out, the decision in Lewis is not in any way helpful to the present analysis because the amount of the filing fee was neither an issue before the court nor decided by the court.
Last, Monroe maintains that the decision of the Appellate Division in Village Supermarkets v. West Orange Tp., 206 N.J.Super. 597, 503 A.2d 370 (App.Div.1986), aff'd as mod., 106 N.J. 628, *280 525 A.2d 323 (1987), assists its position in this case. The municipality observes that the Appellate Division permitted a single tenant in a multi-tenanted shopping center to maintain a local property tax appeal with respect to the entire shopping center because the tenant was actually paying a portion of the local property tax. The Appellate Division noted that since the tenants, pursuant to lease arrangements, were actually paying the taxes, the owner was unconcerned with the appropriateness of the assessment. This caused the appellate court to remark that an egregious assessment would go unchallenged if the real interested party, the tenant, were not permitted to maintain an action for a reduced assessment. Monroe contends that, in this case, the egregious assessments will also go unchallenged if Monroe, the real interested party, is effectively prevented from pursuing the present action because of the required filing fees.
The short and simple response to this assertion is that each and every condominium owner has the right to challenge what that owner perceives to be an excessive assessment. In this ease the real parties in interest, the condominium owners, chose not to appeal their assessments for 1996.
Therefore, it is my conclusion that the Tax Court Management Office correctly applied the filing fee requirements of R. 8:12(c)(2) to Monroe’s two complaints. It is also my conclusion that the filing fee requirements of R. 8:12(c)(2) should not be relaxed or waived under R. 1:1-2. Monroe is directed to pay the requisite filing fee of $25 for each of the 2,390 individual assessments pursuant to R. 8:12(c)(2) within ten days.
Monroe’s application for consolidation of the two actions pursuant to R. 8:8-3 is premature and will not be considered until the additional fees, permitting the filing of the complaints, have been paid.

 There were other deficiencies noted by the Management Office but these were not contested by Monroe in the present motion.

 R. 8:12(a) specifies a fee of $135 but that amount was increased by the Legislature in August 1996. See L. 1996, c. 52, effective August 27, 1996.

 It is interesting to note that although Monroe claims its previous assessor implemented an illegal reassessment for 1996, it does not seek to eliminate the alleged reassessment in its entirety. For example, it did not attempt to appeal 53 of the 2,443 judgments issued by the county board.