A transfer inheritance tax of $1,407.28 was assessed by the comptroller (under P.L. 1909 ch. 228, as amended by *Page 325 P.L. 1922 ch. 174), in respect of a legacy given by the will of David Paton, deceased, to the trustees of Princeton University. Appellants contend that the transfer by the legacy in question is exempt from taxation by virtue of the amending statute, P.L.1925 ch. 102, which exempts from such tax testamentary transfers "to or for the use of any institution solely educational for whose benefit there may have been or may hereafter be appropriations made by the legislature of this state."
Concededly, Princeton University is an "institution solely educational;" and it is a corporation of, and located in, this state, and hence not excluded from exemption under the determination in Alfred University v. Hancock, 69 N.J. Eq. 470; 46 Atl. Rep. 178. Concededly, also, the legislature of this state, prior to the death of the present testator, made appropriation for the benefit of this institution, to wit, by an act passed February 19th, 1796, directing the state treasurer to pay to it (under its former title, "The College of New Jersey") the sum of six hundred pounds for three successive years.
Respondent denied the right to exemption, holding that the legatee does not come within either the letter or the spirit of the amendment of 1925; and that that act is unconstitutional and invalid. It is concluded that the determination of the comptroller is erroneous on both points.
The contention that the legatee does not come within the letter of the statute is that the statute used the plural "appropriations," and that there has been only a single appropriation made to Princeton by the legislature. It is contended that the legislative intent was not to exempt an institution to which it had extended benefit on only one occasion, but that the exemption was intended for Rutgers University, to which repeated appropriations, aggregating millions of dollars, have been made in recent years — that it was intended to apply to what are popularly termed "state aid" educational institutions.
It is deemed that such an interpretation of the statute is too narrow. It is undoubtedly true that the legislative object and purpose was to exempt educational institutions which *Page 326 
had been or should be the recipients of "state aid;" therationale of such purpose being that any such institution performing such an important public service as to merit and receive financial assistance from the state, should be exempted from taxation by the state. To give with one hand, and take away (by taxation) with the other, is inconsistent, if not incongruous.
That object and purpose — as respondent himself points out — is expressed in general terms; and naturally so. For that very reason, it is impossible to ascribe to the language of statute an intent that an institution to which the legislature by separate statutes in two different years had given (or should give) two appropriations of perhaps $1,000 each, should be exempt, but that an institution to which it had given (or should give) only a single appropriation, perhaps of many thousand, should not be exempt.
That it was the legislative intent, as a practical matter, to exempt only Rutgers University — to single it out alone for benefit — is not probable, and is not to be presumed. Such a course would be perilously near, if not indeed actually, a contravention of the constitutional prohibition against a grant of exclusive privilege or immunity (Const. art. 4 § 7 ¶11), notwithstanding it be attempted by language technically, and on its face, not limited to a single beneficiary.
If it had been the legislative intent to grant the exemption to an institution only if that institution had received more than one legislative appropriation, it would be natural for it to have expressly so stated in just those words — "more than one appropritation" — rather than to have used the word "appropriations," which at best is ambiguous. The probability is, therefore, that in using the word "appropriations" it did not do so with the intent to express the strict technical meaning of "more than one appropriation," but used it in the sense of "appropriation or appropriations."
Moreover, even if the word should be given the strict technical meaning of "more than one appropriation," Princeton University still comes within the letter of the statute; for it did receive from the legislature what would be understood *Page 327 
by the ordinary man as "appropriations" — appropriations forthree successive years, of six hundred pounds each, although made by a single statute.
The argument that this institution does not come within the spirit of the statute is based on the contention that the legislature designed to exempt "state aid" institutions (as heretofore explained), but that it would be an absurdity to deem Princeton University as coming within that category because of a single legislative appropriation of only $9,000 made one hundred and thirty years earlier. The alleged absurdity is not apparent to this court. The classification made by the legislature is on the basis of general principle — not dollars and cents; the design was to exempt such educational institutions as were performing such a beneficent and important public service as to have won (or hereafter to win) the stamp of approval in the form of financial aid by the legislature — no "dead line" of any specific amount was fixed or was intended to be fixed. Moreover, it is to be borne in mind that although $9,000 may seem a small appropriation in these days, it was in 1796 by no means an inconsiderable amount.
Respondent also argues that the exempting statute is unconstitutional and therefore invalid, first, as being arbitrary and special legislation in violation of article 4, section 7, paragraph 11 of the state constitution (hereinbefore mentioned); and second, as having originated in the senate and therefore being in violation of article 4, section 6, paragraph 1 of the state constitution, which requires that "all bills for raising revenue shall originate in the house of assembly, * * *."
As to the second of these contentions, it is conceded that the statute in question originated as a senate bill. It is a supplement — an amendment — to the Transfer Inheritance Tax act which is a statute for raising revenue. Obviously, however, it is not in itself a bill for raising revenue; its purpose and effect is rather somewhat to decrease revenue than to increase it. Apparently in England such an amendment must originate in the house of commons (Cush. Law Pr. of Leg. Assemblies (9thed.) 890; 1 Story Const. (5th ed.) 643) but no authority has been cited or found which lays *Page 328 
down a similar rule in this country. Indeed, such of those authorities in this country, cited by counsel, as touch upon the point, tend to indicate a contrary view. See United States v.Norton, 91 U.S. 566 (at pp. 568, 569); The Nashville, 4Biss. 188 (at p. 193); United States v. James, 13 Blatch.207; Northern Counties Investment Trust v. Sears, 35 L.R.A. 188and note; Story Const. (5th ed.) 642, 643 and note. And the presumption is in favor of constitutionality.
It is deemed by this court that such an amendment does not come within the letter or the spirit of the constitutional interdiction.
Neither can this court concur in the contention that the legislative classification is unreasonable and discriminatory. The reasonableness of extending an exemption to a general class of "state aided" institutions has already been pointed out herein. Such a classification has been adopted in Connecticut. See Corbin v. Baldwin, 92 Conn. 99. In our earlier Inheritance Tax act (P.L. 1894 p. 318 § 1), exemption was granted to many classes of religious, charitable and benevolent institutions, including all educational institutions in this state, of the type of Princeton University. Alfred University
v. Hancock, supra. By the subsequent legislation of 1922 (P.L.1922 ch. 174), exemption was not given to any edutional institutions (nor to any one other than the state itself and its political subdivision). The legislature has now said that some
educational institutions shall have exemption, i.e., those of such importance to the state as to receive financial aid from the state. It is not perceived that such a classification is to be regarded as unreasonable. It is primarily and peculiarly the province of the legislature to exercise its judgment and discretion in determining for the public interest and welfare what classes shall be affected by particular laws. With that legislative duty and prerogative the courts have no right to interfere unless the legislative classification is clearly unreasonable and discriminatory.
It is concluded that the tax in the instant case should be set aside. *Page 329