MENYUK, J.T.C.
This matter comes before the court on a motion by defendants Director, Division of Taxation (the “Director” and the “Division”) and the Camden County Board of Taxation (collectively, the “State defendants”) to dismiss the complaints in these matters for failure to state a claim upon which relief can be granted and for mootness. Lindenwold Borough joins in the motion of the State defendants.
The complaints challenge the validity of L. 2001, c. 101 (“Chapter 101”) on its face and as applied on various constitutional grounds. In general terms, Chapter 101 provides that an assessor may reassess all or some of the properties in a taxing district when the assessments on those properties are not consistent “with the purpose of securing uniform taxable valuation of property,” N.J.S.A. 54:4-23, provided the assessor first obtains approval of his or her plan of reassessment from the Division and the county board of taxation.
The defendants’ motion here is limited to plaintiffs’ allegations that the statute is unconstitutional on its face. This opinion also considers plaintiffs’ request for class certification, and expands upon and amplifies an earlier bench opinion determining that Chapter 101 is not in violation of the Bill Origination Clause, N.J. Const. art. IV, § 6, ¶ 1.
For the reasons stated below, I find that the statute is not unconstitutional on its face, amplify and expand my earlier opinion that the enactment of Chapter 101 did not violate the Bill Origination Clause, and find that these matters should not be certified as a class action.
I. Background and Procedural History
A. Complaints
Originally, this action was filed as a single complaint by thirteen plaintiffs that are the owners of apartment house properties in Lindenwold. The complaint alleged that, pursuant to N.J.S.A. 54:4-23, as amended by Chapter 101, the Lindenwold assessor had made an application to review and revise, if necessary, the assess *396 ments of twenty-five apartment properties for tax year 2003. The complaint further alleged that the Assistant Director of the Division had approved the application for the plan of review and revision (called a “compliance plan” by the statute). Finally, the complaint alleged that the compliance plan was invalid “both as conceived and as applied.”
Plaintiffs sought a judgment reversing the Division’s approval of the compliance plan, barring an increase to any of the existing assessments, restoring the prior year’s assessment in place of any assessment that had been increased as a result of the compliance plan, and refunding any money paid by the plaintiffs as a result of any increase of the assessments of the properties owned by the plaintiffs. Plaintiffs claimed that Chapter 101 was enacted in violation of the New Jersey Constitution’s Bill Origination Clause, N.J. Const. art. IV, § 6, ¶ 1, and Uniformity Clause, N.J. Const. art. VIII, § 1, ¶ 1(a), and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, U.S. Const, amend. XIV, § 1. Plaintiffs additionally claimed that the assessor’s actions in proposing the compliance plan, the actions of the Division in approving the compliance plan, and the actions of the Camden County Board of Taxation and the Borough of Lindenwold and its officials in approving and/or acquiescing in the plan were arbitrary, capricious and unreasonable. Finally, plaintiffs sought certification as a class.
The complaint was filed on December 26, 2002 and answered by the State defendants on February 14, 2003 and by the Lindenwold assessor, mayor and council (the “Lindenwold defendants”) on February 19, 2003. There was an initial case management conference in March 2003, at which time it was pointed out that the statutory deadline for the filing of local property tax appeals for tax year 2003 was April 1, N.J.S.A. 54:3-21, and that it would be unlikely that the issues raised by the complaint, including whether certification as a class was appropriate, could be briefed and resolved before that date. Notably, previous decisions of the New Jersey courts have denied attempts to challenge a group of local property tax assessments by way of a single action, and have denied relief where a purported class of taxpayers had failed to *397 bring actions complying with the procedural requirements of N.J.S.A. 54:3-21. See, e.g., Pleasantville Taxpayers v. City of Pleasantville, 115 N.J.Super. 85, 278 A.2d 229 (App.Div.1971) (affirming summary judgment granted to the defendant municipality where plaintiffs failed to pursue the statutory remedy to appeal tax assessments and instead brought suit in the Law Division, alleging discriminatory assessments in a nine-block area of the municipality).
Plaintiffs’ counsel filed thirteen amended complaints on April 1, 2003, each naming as plaintiff one of the plaintiffs named in the original complaint and each seeking the same relief as sought in the original complaint. As set forth in the case information statements filed with the thirteen amended complaints, the total assessments (including both land and improvements) for tax years 2002 and 2003 for each of the plaintiffs’ properties were:
Plaintiff 2002 Assessment 2003 Assessment
Chadwick 99 Associates $ 2,495,000 $ 3,010,000
Trent Court LP _$ 9,990,000_$ 9,000,000
Stonington Court Associates_$10,500,000_$10,000,000
Lynnebrook Gardens, LLC $ 1,250,000 $ 1,750,400
Wawn LLC $ 450,000 $ 502,100
Kingswold LP $ 4,200,000 $ 4,771,700
Christopher S. Vernon $ 2,125,000 $ 2,785,000
Village Bridge Affordable Housing $15,300,000_$16,878,100
Timber Ridge LLC $ 5,200,000 $ 6,691,100
Pine Ridge 93 Associates $ 1,900,000 $ 2,724,200
Lindenwold Associates $ 3,500,000 $ 5,047,100
Heathers Realty LLC $ 4,865,900 $ 5,315,800
Colonial Pines Linden Associates $ 7,500,000 $ 9,436,900
As is apparent from the foregoing, the assessments on the properties of two of the thirteen plaintiffs — Trent Court LP and Stoning-ton Court Associates — actually went down as a consequence of the contested compliance plan.
*398 B. Prior Motion
Pursuant to a case management order directing motions and briefs on jurisdictional and procedural issues raised by the pleadings that would not require discovery, including the validity of Chapter 101 under the Bill Origination Clause, the State defendants, joined by the Lindenwold defendants, moved to dismiss the plaintiffs’ Bill Origination Clause, facial Equal Protection and facial Due Process claims and plaintiffs’ claims seeking class action certification. In a bench opinion, I dismissed the claims based on the Bill Origination Clause and did not consider the remaining portions of the State defendants’ motion at that time, principally because the issues raised went beyond the bounds of the case management order. The issue of class certification was deferred.
There was an extended period of time during which Lindenwold and the plaintiffs unsuccessfully attempted to reach a settlement of this litigation. The parties also proceeded with discovery and the State defendants, joined by the Lindenwold defendants, renewed their motion to dismiss the complaints for failure to state a claim upon which relief can be granted and for mootness.
C. Present Motion
It is the defendants’ contention that Chapter 101 provides a valid method for the maintenance of assessments, thereby maintaining the general level of assessment within a taxing district. The defendants assert that this assessment maintenance is fully consistent with the Uniformity Clause, the Equal Protection Clause, and the legislative design of the local property tax statutes. Alternatively, the defendants contend that the complaints are moot since it is too late to prevent the implementation of the compliance plan that was effective for tax year 2003.
Plaintiffs assert that the compliance plan amounts to spot assessment. See West Milford Tp. v. Van Decker, 120 N.J. 354, 361, 576 A.2d 881 (1990), in which the New Jersey Supreme Court condemned the practice of singling out for reassessment only taxpayers who had purchased homes in the prior tax year, called *399 “spot assessment,” and held that such spot assessment violated the Uniformity and Equal Protection Clauses.
Chapter 101, which amended N.J.S.A. 54:4-23, provides:
[W]hen the assessor has reason to believe that property comprising all or part of a taxing district has been assessed at a value lower or higher than is consistent with the purpose of securing uniform taxable valuation of property according to law for the purpose of taxation, or that the assessment of property comprising all or part of a taxing district is not in substantial compliance with the law and that the interests of the public will be promoted by a reassessment of such property, the assessor shall, after due investigation, make a reassessment of the property in the taxing district that is not in substantial compliance, provided that (1) the assessor has first notified, in writing, the mayor, the municipal governing body, the Division of Taxation in the Department of the Treasury, the county board of taxation, and the county tax administrator of the basis of the assessor’s determination that a reassessment of that property in the taxing district is warranted and (2) the assessor has submitted a copy of a compliance plan to the county board of taxation and to the Division of Taxation for approval. If the assessor does not receive an approval decision or a decision disapproving the plan from either the county board of taxation or the Division of Taxation within 45 days of their receipt of the compliance plan, then the entity that did not respond shall be deemed to have approved the plan. Following a reassessment of a portion of the taxing district pursuant to an approved compliance plan, the assessor shall certify to the county board of taxation, through such sampling as the county board of taxation deems adequate, that the reassessment is in substantial compliance with the portions of the taxing district that were not reassessed.
D. The Compliance Plan
The compliance plan submitted to the Division and approved by the Assistant Director of the Division, proposed the reassessment of twenty-five apartment properties in Lindenwold. According to the deposition of the Lindenwold assessor, the last revaluation in Lindenwold had been put in place for tax year 1996, and that sometime between 1996 and 2000, the Lindenwold governing body had passed an ordinance phasing out rent control on apartment buildings. It was the assessor’s deposition testimony that following the passage of the rent decontrol ordinance, he had observed that sales prices of apartment properties in Lindenwold were greater than the assessments placed on the properties in connection with the 1996 revaluation. Those assessments had apparently been carried forward from year to year through tax year 2002.
The town retained the services of an appraiser to value the apartment properties, although it is not clear from the assessor’s *400 testimony whether that occurred before or after the compliance plan was sent to the Division and the County Board for approval. The assessor did state, however, that he analyzed all of the recent sales of real property in Lindenwold. He testified that there are approximately twenty-five “neighborhoods” or “value control sectors” [1] in Lindenwold and that he reviewed all of them prior to seeking approval of the compliance plan. In applying for approval of the compliance plan, the assessor used the Division’s form, which, according to the testimony of the assessor, has more than one page. The first page was included as an exhibit to the complaint, but the rest of the application has not been provided to the court by the parties. The first page provides general assessment data for the municipality, and specific information about the neighborhoods where assessments need adjustments. According to the assessor, subsequent pages of the form included analysis information regarding other neighborhoods in Lindenwold.
According to the first page of the application for the compliance plan, Lindenwold’s 2002 assessment list had a total of 4624 line items. The Director’s October 1, 2002 average ratio for Lindenwold was 97.68%. See N.J.S.A. 54:1-35a(a) (defining average ratio). The ratio of assessed value to market value for apartment houses with five or more units (denominated as Class 4C by N.J.A.C. 18:12-2.2(g)) in Lindenwold, which is comprised of all of the twenty-five apartment properties that were the subjects of the compliance plan, was 68.87%. The application stated that the ratio for the twenty-five apartment properties was based on six sales of such properties that had taken place between June 21, 2000 and June 30, 2002. The compliance plan was to revise the assessments of the apartment properties by applying the average ratio of the taxing district to the market value of each of the twenty-five properties.
*401 At his deposition, the assessor testified that the proposed compliance plan was originally sent to the Division and the County Board for approval in September 2002, but was initially rejected because the assessor had incorrectly used the average ratio for the prior year. He resubmitted the application on or about October 18, 2002. It was approved by Assistant Director Stephen Sylvester on behalf of the Division in November 2002.[2] No action was taken by the County Board of Taxation. By the terms of Chapter 101, the compliance plan was deemed approved because the plan was approved by the Director and the assessor did not receive notification of disapproval of the plan from the court board within forty-five days of its having been submitted. N.J.S.A. 54:4-23.
II. Bill Origination Clause
In an earlier bench opinion, I determined that Chapter 101 did not violate the Bill Origination Clause, N.J. Const. art. IV, § 6, ¶ 1, which provides that: “All bills for raising revenue shall originate in the General Assembly; but the Senate may propose or concur with amendments, as on other bills.” I amplify and expand upon my earlier determination here.
As a threshold matter, I must consider defendants’ contention that plaintiffs’ claims based on the invalidity of Chapter 101 under the Bill Origination Clause are untimely. Defendants’ argument is based on N.J.S.A. 1:7-1 to -7, which provide for a challenge to a statute premised solely on its enactment contrary to the procedural requirements of the New Jersey Constitution. Such an application must be made directly to the Appellate Division within one year after the law has been filed with the Secretary of State. See N.J.S.A. 1:7-1 (providing for an action by the Attorney General at the direction of the Governor); N.J.S.A. 1:7-4 (same action prosecuted by two or more citizens of the State). The defendants contend both that the plaintiffs are out of time to challenge *402 Chapter 101 on the ground that its enactment violated the Bill Origination Clause, and that this court lacks jurisdiction because N.J.S.A. 1:7-1 and -4 provide that the action is to be brought in the Appellate Division.
There is no recent ease law directly on point. The conclusion of the courts that have considered the matter, however, is that the statutory provisions relied upon by the defendants provide a means for citizens to challenge the passage or approval of a law in the absence of an otherwise justiciable ease or controversy, and is not intended to affect such challenges when made between parties to an actual case or controversy. See In re An Act Concerning Public Utilities, 83 N.J.L. 303, 306-07, 84 A 706 (Sup.Ct.1912) (construing a predecessor statute and concluding that its purpose was to provide a method outside litigation of a case or controversy between parties by which it could be determined whether a statute was unconstitutional); see also Ex parte Hague, 104 N.J. Eq. 31, 64-66, 144 A. 546 (Ch.Div.1929) (determining that an earlier version of N.J.S.A. 1:7-1 to -7 was not an exclusive remedy).
More recently, courts have heard challenges on bill origination grounds in cases not brought under N.J.S.A. 1:7-1 to -7. In State v. Thermoid Co., 16 N.J. 274, 275, 108 A.2d 421 (1954), the Supreme Court of New Jersey found it proper to consider a Bill Origination Clause challenge to a statute concerning escheat of personal property in an action brought by the State to take custody of certain unclaimed wages. The Court chose not to consider the State’s argument that objection to the legislative procedure had not been timely made in compliance with N.J.S.A. 1:7-1 to -7, stating that, “[d]espite the worth of this argument, we conceive the merits of the constitutional question to be of sufficient importance to require a direct answer. Consequently, we have put aside consideration of the reasons urged in the procedural matters to accomplish this purpose.” Id. at 275-76,108 A.2d 421. The Court’s approach suggests that N.J.S.A. 1:7-1 to -7 is at most a procedural mechanism, and is not jurisdictional where a challenge to the machinery of enactment is otherwise properly before the court.
*403 Plaintiffs’ challenge to Chapter 101 on Bill Origination Clause grounds is made in the context of an actual controversy between the parties. I conclude that the challenge is not untimely and that this court has jurisdiction to consider the matter.
The legislative history of Chapter 101 was recounted in some detail by Judge Kuskin in BASF Corp. v. Town of Belvidere, 22 N.J.Tax, 550, 557-58 (Tax 2005), in which the court rejected the taxpayer’s contention that reassessment of a single property required the approval of a compliance plan under Chapter 101. Briefly, the bill that eventually became Chapter 101 was first introduced in the Senate as S. 1334 on May 22, 2000. As introduced, the bill would have required an assessor to order a revaluation or make a reassessment of the entire taxing district when the assessor had reason to believe that the assessments of property in a part of the taxing district were not consistent with the purpose of securing uniform taxable valuation of property. As amended by the Senate Community and Urban Affairs Committee, the assessor was required to reassess the entire taxing district, and the authorization to order a complete revaluation was deleted. See Senate Community and Urban Affairs Committee, Statement to S. 1334 (June 15, 2000). A September 21, 2000 Senate floor amendment required the assessor to notify local government officials, the Division, the county board of taxation and the county tax administrator of the proposed reassessment. Significantly, for purposes of these actions, “[.t]he amendments also clarify that a tax assessor may reassess all the property in the taxing district that is assessed incorrectly.” Statement to [First Reprint] S. 1334 (adopted Sept. 21, 2000). A second floor amendment was adopted on October 2, 2000, requiring the approval of the Division and the County Board of Taxation prior to the implementation of the compliance plan. See Statement to [Second Reprint] S. 1334 (adopted Oct. 2, 2000). As amended, S. 1334 was passed by the Senate on October 23, 2000 and received in the Assembly on October 30, 2000. It was referred to the Assembly Local Government Committee. S. 1334 was reported out of the Assembly Committee on January 18, 2001, with amendments. The only significant amendment for purposes of these actions was *404 “to clarify that an assessor need not perform a reassessment of the entire municipality when he or she determines that only part of the taxing district is not in substantial compliance with the law.” Assembly Local Government Committee Statement to S. 1334 (Jan. 18, 2001).
On November 9, 2000, A. 2947 was introduced in the Assembly in the same form that S. 1334 had originally been introduced to the Senate, and also was referred to the Local Government Committee. The Assembly bill was reported out of committee on January 18, 2001 with committee amendments. As amended, A. 2947 was identical to S. 1334 as it had also been amended by the Assembly Local Government Committee. See Assembly Local Government Committee, Statement to A. 2947 (Jan. 18, 2001). On May 10, 2001, A. 2947 was substituted by S. 1334 and passed by the Assembly. On May 14, 2001, S. 1334, as amended by the Assembly Committee and as passed by the Assembly, was passed by the Senate.
In response to plaintiffs’ contention that Chapter 101 violates the Bill Origination Clause because the bill that was eventually enacted was first introduced in the Senate, defendants responded that Chapter 101 is outside the ambit of that clause, because Chapter 101 is not a revenue-raising measure. For the following reasons, I concluded in an earlier bench opinion that Chapter 101 is not a revenue-raising measure and therefore does not violate the Bill Origination Clause.
The following principles are applicable in a constitutional challenge to legislation:
A statute or ordinance is presumed to be constitutional and it will not be declared void unless it is clearly repugnant to the Constitution. The burden of establishing that legislation is unconstitutional rests with the challenging party. While the presumption may be rebutted, the burden on the party seeking to overturn a law is a heavy one. When determining the validity of a statute on constitutional grounds, it is presumed that “the legislature acted with existing constitutional law in mind and intended the act to function in a constitutional manner.” Thus, the presumption will not be overcome, and a “legislative enactment will not be declared void unless its repugnancy to the Constitution is so manifest as to leave no room for reasonable doubt.”
*405 [Visiting Homemaker Serv. of Hudson County v. Bd. of Chosen Freeholders of the County of Hudson, 380 N.J.Super. 596, 607-08, 883 A.2d 1074 (App.Div.2005) (citations omitted)].
The amount of revenue to be raised by a municipality is determined by the budget adopted by that municipality, which is then apportioned among the taxpayers of the district, based upon the valuation of their properties. N.J.S.A. 54:4-42, -48. The county board of taxation computes the tax rate for local taxing purposes to apply per $100 of valuation. N.J.S.A. 54:4-52(24). Obviously, a property with a higher assessment will pay more in taxes than a property with a lower assessment, but the total amount to be raised by a municipality remains the same, regardless of how that burden is allocated. Chapter 101 is, therefore, revenue-neutral. It affects only assessments, and not revenue. Notably, it requires a compliance plan when property is assessed higher or lower than is consistent with uniform taxable valuation. N.J.S.A. 54:4-23.
Merely because legislation pertains in some way to taxation does not make that legislation a revenue-raising measure. The courts of this state have consistently held that the Bill Origination Clause is applicable only to bills to levy taxes in the strict sense, and not to bills that may incidentally raise revenue. In re Estate of Paton, 114 N.J. Eq. 324, 327, 168 A. 422 (Prerog.Ct.1933), interpreted an earlier, virtually identical constitutional provision where the issue was the constitutionality of a statute originating in the Senate and amending the transfer inheritance tax act to exempt certain educational institutions from the tax. While recognizing that the transfer inheritance tax was obviously a statute for raising revenue, the court concluded that the exemption amendment was “not in itself a bill for raising revenue; its purpose and effect is rather somewhat to decrease revenue than to increase it.” Ibid. Accordingly, the court determined that the legislation did “not come within the letter or the spirit of the constitutional interdiction.” Id. at 328, 168 A. 422.
In State v. Thermoid Co., supra, which considered the constitutionality of a custodial escheat act that had originated in the Senate, the Court found that the limitation “has been confined to *406 bills to levy taxes in the strict sense of the words, and has not been understood to extend to bills for other purposes, which may incidentally create revenue.” 16 N.J. at 277, 108 A.2d 421 (citation omitted). Thus while the escheat act clearly produced revenue, it did not impose a tax or a levy and was therefore constitutional. Id. at 279,108 A.2d 421. As challenged here, Chapter 101 similarly does not impose a tax or a levy, either by intent or as applied.
In Thiokol Chem. Corp. v. Morris County Bd. of Taxation, 76 N.J.Super. 232, 245, 184 A.2d 75 (Law Div.1962), aff'd on other grounds, 41 N.J. 405, 197 A.2d 176 (1964), the trial court concluded that the statute was intended to raise revenue and that its enactment violated the Bill Origination Clause. The statute in issue provided that when real property which was otherwise exempt was leased to non-exempt entities, the leasehold estate was to be assessed to the lessee. Id. at 235, 184 A.2d 75. The trial court relied in part on the introductory statement accompanying the bill, which asserted that, “[t]he purpose of this bill is to permit municipalities to levy and assess taxes on exempt property when the same is leased for private use. In many municipalities the Federal Government leases its exempt property to business and industry while the same remains exempt from taxation.” Id. at 238, 184 A.2d 75 (citation omitted). Moreover, the defendants conceded that the statute was intended to raise municipal revenue. Id. at 243, 184 A.2d 75. Relying upon State v. Thermoid Co., sttpra, and its approval of the view that the Bill Origination Clause applies only to bills to levy taxes in the strict sense, the trial court found the statute contravened the Bill Origination Clause. Id. at 243-45,184 A.2d 75.
Plaintiffs point out that Thiokol did not explicitly impose a tax, but merely shifted a portion of the tax burden to lessees of exempt property that would not otherwise be liable for taxes. They contend that the compliance plan here similarly shifts the tax burden and should also be regarded as a revenue-raising measure. Two observations should be made about the Thiokol case. First, the statute considered there was intended to reach entities that had not previously been required to pay local property taxes. In *407 that sense, the Legislature was creating a new revenue source which arguably could be considered “revenue raising.” Second, the Supreme Court of New Jersey never considered the issue of the Bill Origination Clause in that case, because it determined that there was no lease within the meaning of the statute. The statute was later held to be constitutional in Todd Shipyards Corp. v. Weehawken Tp., 45 N.J. 336, 212 A.2d 364 (1965), where the sole issue raised was whether the statute discriminated against the federal government. The precedential value of the trial court decision in Thiokol is, therefore, doubtful.
The intention of Chapter 101 as indicated by its plain language and its legislative history was to bring properties that were either over-assessed or under-assessed into compliance with the constitutional command that real property be assessed according to the same standard of value. N.J. Const. art. VIII, § 1, ¶ 1(a). There is nothing either in Chapter 101 itself, or in the legislative history, or in the application of Chapter 101 to implement a compliance plan under the facts of this case from which I can conclude that the legislation was a revenue-raising measure that was required to be introduced in the Assembly.
Defendants finally assert that both houses of the Legislature effectively voted on the same Assembly bill for which S. 1334 was substituted and that it would elevate form over substance to find a violation of the Bill Origination Clause. In light of the conclusion that Chapter 101 does not constitute a revenue raising measure, I do not reach that argument.
III. Class Certification
Plaintiffs allege that they are “members of an ascertainable class of similarly situated property owners whose interests are affected in a similar manner by the conduct of the Defendants in this case and the existence of Chapter 101 ... which class would include all apartment house owners whose assessments are increased as a consequence of the conduct” of the defendants. Plaintiffs seek class certification and ask that any relief that may be granted to them also be granted to other similarly situated plaintiffs.
*408 As indicated on the application for the compliance plan included in the complaint, and in the deposition testimony of the assessor, there are twenty-five apartment properties that were included in the compliance plan, which constituted all of the Class 4C apartment properties in Lindenwold. Plaintiffs own thirteen of those twenty-five properties. Of those thirteen, two have had their assessments reduced as a consequence of the compliance plan and eleven have had their assessments increased. Defendants contest class certification on the ground that the applicable statutes, court rules, and case law do not permit challenges to local property tax assessments to be pursued by way of class action, but direct that such challenges must be brought as individual appeals. The defendants also assert that even if class actions were permitted in local property tax appeals, none of the requirements for class certification are present in this ease. Plaintiffs contend that they are not appealing the individual assessments of the members of the purported class, but are attacking the compliance plan, and that the authority relied upon by defendants is inapplicable.
A. N.J.S.A. 54:3-21 Requires an Aggrieved Taxpayer to file a Complaint to Pursue an Appeal
Rule 4:32-1 pertains to class actions and is the principal authority cited by plaintiffs in support of their claim for class certification. As pointed out by the defendants, however, R. 8:3-1(b) requires that a separate complaint be filed for each separately assessed property, with certain exceptions not relevant here. Because Part IV Rules are applicable to the Tax Court except as otherwise provided in the Part VIII Tax Court Rules, R. 4:1, R. 4:32 is therefore not applicable to local property tax appeals. R. 8:3-1(b) explicitly excludes the possibility of a class action. Tax Court R. 8:3-1(b) is consistent with N.J.S.A. 54:3-21, which provides that a taxpayer aggrieved by its assessment may on or before April 1 appeal to the county board of taxation by filing a petition or may appeal directly to the Tax Court by filing a complaint if the assessment in issue exceeds $750,000. The court has not been advised that any of the remaining twelve apartment property owners that are not plaintiffs in these actions has timely *409 filed a property tax appeal for tax year 2003 pursuant to N.J.S.A. 54:3-21.
The courts of this State have routinely rejected class certification for local property tax actions on the ground that the statutory requirements for a tax appeal must be met. See Ochsner v. Cranbury Tp., 8 N.J.Tax 330, 333-34 (App.Div.1986) (Tax Court “properly declined to grant class certification because there was no evidence that any other member of the purported class of aggrieved taxpayers who plaintiff sought to represent had filed a timely appeal.”); Pleasantville Taxpayers v. City of Pleasantville, supra, 115 N.J.Super, at 90, 278 A.2d 229 (rejecting taxpayers’ request to permit them to pursue their tax appeals before the county board of taxation as a class because appeals to the county board are governed by the statutory requirements of N.J.S.A. 54:3-21). Cf. In re Monroe Tp., 16 N.J.Tax 261 (Tax 1996). There, the municipality contended that it should pay a single filing fee to contest the assessment on over 2000 condominium units because the only issue was whether its prior assessor had conducted and implemented an illegal reassessment. Id. at 267. The court determined that a separate filing fee was required for each unit, because the court would inevitably have to make individual determinations of value, and it could not simply restore the assessments to their previous level without valuation proofs, as requested by the municipality, since that relief would be an injustice to all of the other taxpayers in the municipality. Id. at 271.
The parties have cited[3] only two cases involving tax matters in which class certification has been granted. Neither certified class was prosecuting a local property tax appeal. American Trucking Ass’n., Inc. v. Kline, 8 N.J.Tax 181 (Tax 1986), aff'd 9 N.J.Tax 631 (App.Div.1987), involved the constitutionality of a “decal fee” alleged to discriminate against out-of-state truckers. The court certified a class of approximately 25,000 out-of-state truckers, finding that no purpose would be served by requiring 25,000 *410 separate refund claims and 25,000 separate denials by the Director, Division of Motor Vehicles; moreover, the defendants conceded that the plaintiffs met the prerequisites of R. 4:32-l(a) for certification as a class. Id. at 188. In Hannoch Weisman v. Brunetti, 13 N.J.Tax 346 (Tax 1993), the court had certified a class of tenants who claimed a right to a refund resulting from the landlord’s appeal of property tax assessments for several tax years. The court later conceded that “arguably, the certification was unwarranted,” because the members of the class could easily be identified and were not particularly numerous. Id. at 352.
In sum, the weight of authority is that appeals of local property tax assessments may not be maintained as a class action, regardless of whether the action is brought as a conventional tax appeal or under a theory such as that relied upon by plaintiffs here. N.J.S.A. 54:3-21 requires that aggrieved taxpayers file a petition with the county board of taxation or file a complaint directly with this court if the assessment exceeds $750,000. As noted in Monroe Township, supra, the duty of the court to determine the true value of each of the subject properties “cannot be circumscribed by the manner in which a plaintiff elects to word its complaint.” 16 N.J.Tax at 270.
B. The Requirements of R. 4:32-1(a) Have Not Been Met.
Even if I were to conclude that local property tax appeals could be pursued by way of a class action, certification as a class action is not appropriate in this case. One or more members of a class may sue as representative parties on behalf of all parties only if all four requirements of R. 4:32-1(a) are met. I conclude that plaintiffs fail to meet all of the conditions of R. 4:32-1(a), which provides:
One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.
There are only twenty-five apartment properties that were the subject of the contested assessment plan, and thirteen of them are already plaintiffs in this action. Accordingly, the class of plaintiffs *411 fails to satisfy the conditions of R. 4:32-1(a)(1). Notably, all affected property owners were notified of the reassessment, and a meeting was held at which the assessor explained the compliance plan. Any of the twelve non-plaintiff apartment property owners could have filed a complaint on the same grounds that plaintiffs raise here, assuming that their assessments were actually increased as a consequence of the plan.
More problematic, however, is the plaintiffs’ inability to satisfy R. 4:32-1(a)(3) and (a)(4). The basis of plaintiffs’ complaints is that the entire compliance plan authorized by Chapter 101 is constitutionally invalid both as conceived and as applied. Yet they seek to create a class of plaintiffs consisting of only those apartment house owners whose assessments have been increased as a consequence of the compliance plan. If the plan is invalid, it is invalid as to all affected property owners, and not just those who had their assessments increased. Significantly, two of the plaintiffs here had their assessments decreased as a consequence of the compliance plan. Those two plaintiffs are not typical of the class. Further, plaintiffs ask that the court vacate the approval of the compliance plan. That would necessarily mean that the assessments of all twenty-five members of the class would have to be returned to their pre-compliance plan levels. For at least two of the plaintiffs and an unknown number of the remaining twelve apartment properties, this would mean increasing any assessments that had been lowered as a consequence of the compliance plan. I conclude that these plaintiffs are not representative of a class that has been injured by implementation of the compliance plan since two of them were not injured but were benefited by the plan. I also conclude that the plaintiffs will not fairly and adequately protect the interests of all twenty-five members of the putative class.
For the foregoing reasons, plaintiffs’ request to be certified as a class is denied.
IV. The Uniformity Clause
Plaintiffs’ Uniformity Clause claim is at the heart of their complaints. That clause provides:
*412 Property shall be assessed for taxation under general laws and by uniform rules. All real property assessed and taxed locally or by the State for allotment and payment to taxing districts shall be assessed according to the same standard of value, except as otherwise permitted herein, and such real property shall be taxed at the general tax rate of the taxing district in which the property is situated, for the use of such taxing district.
[N.J. Const, art. VIII, § 1, ¶ 1(a) ].
It is plaintiffs’ contention that Chapter 101 is no more than legislatively sanctioned spot assessment, and that even if their properties are under-assessed, those assessments may not be changed unless the assessor undertakes a revaluation or reassessment of the entire municipality. Plaintiffs assert that their right “to be left alone” is superior to the constitutional command that property be assessed according to the same standard of value. Plaintiffs cite no case law to support that particular proposition and the court was unable to locate any.
Plaintiffs rely on Baldwin Construction Co. v. Essex County Board of Taxation, 16 N.J. 329, 108 A.2d 598 (1954), and West Milford Tp. v. Van Decker, supra, 120 N.J. 354, 576 A.2d 881. In both of those cases, our Supreme Court declared that a fundamental principle expressed by the Uniformity Clause is equality of treatment and of burden in property tax assessments. Van Decker, supra, 120 N.J. at 360-61, 576 A.2d 881, quoting Baldwin Construction Co. supra, 16 N.J. at 340, 108 A.2d 598. What plaintiffs appear to be asserting here is that equality of treatment requires that property that is rising or decreasing in value at a rate inconsistent with the rest of the taxing district must be “left alone.” Neither Van Decker nor Baldwin Construction Co. impose that requirement. As made clear in Van Decker, “equality of treatment” means “sharing the duty to pay real estate taxes.” 120 N.J. at 360, 576 A.2d 881. What both Van Decker and Baldwin Construction Co. find constitutionally impermissible is the selection of properties for assessment revision in an arbitrary and discriminatory manner. Baldwin Construction Co., supra, 16 N.J. at 338-39, 108 A.2d 598; Van Decker, supra, 120 N.J. at 361-63, 576 A.2d 881.
Consistent with the command of the Uniformity Clause that all property in a taxing district be assessed at the same standard of *413 value, assessors are obligated by statute to make an annual assessment of each parcel of real property in a taxing district at its full and fair value. N.J.S.A. 54:4-23. Ideally, the annual assessment list of every municipality would reflect that full and fair value every year, but the “practicalities obviously preclude most assessors reviewing every assessment line item every year.” Tri-Terminal Corp. v. Edgewater Bor., 68 N.J. 405, 414, 346 A.2d 396 (1975). Accordingly, the Supreme Court of New Jersey has recognized that assessors must be alert to changed valuation factors “peculiarly affecting individual properties in years between revaluations” and make the appropriate adjustments “in fairness to the particular taxpayer or to the taxing district.” Ibid.
In Van Decker, supra, the Court concluded that “welcome stranger” spot assessment was arbitrary, intentional discrimination and therefore was constitutionally impermissible. 120 N.J. at 362-63, 576 A.2d 881. In Van Decker, the assessor selected only recently sold homes for reassessment and adjusted the assessments based on the sales price. However, the Court cited several examples of permissible assessment revisions not amounting to a municipal-wide revaluation. Id. at 362, 576 A.2d 881. Notably, the examples include the reassessment of all apartment complexes in a township based on the adoption of a vacancy decontrol ordinance. Ibid., citing Frieman v. Randolph Tp., 216 N.J.Super. 507, 524 A.2d 453 (App.Div.1987), certif. granted, 108 N.J. 665, 532 A.2d 242, appeal dismissed, 110 N.J. 294, 540 A.2d 1276 (1988).
Several Appellate Division and Tax Court cases decided subsequent to Van Decker have examined at what point the limits of legitimate assessment revision are reached. Plaintiffs rely on Centorino v. Tewksbury Tp., 347 N.J.Super. 256, 789 A.2d 655 (App.Div.2001) and on Schumar v. Bernardsville Bor., 347 N.J.Super. 325, 790 A.2d 171 (App.Div.2001). In Centorino, the Appellate Division found the assessor’s explanation of the increased assessment to be insufficient. 347 N.J.Super. at 264-66, 789 A.2d 655. The assessor had re-examined the property record card upon the sale of the property to plaintiff and noted that the property had been incorrectly characterized as a class 18 rather than a class 20 construction class. Id. at 261, 789 A.2d 655. The *414 Appellate Division perceived the explanation as pretextual and concluded that the assessment was an invalid spot assessment. Id. at 262, 789 A.2d 655. The court concluded that to accept the explanation offered by the assessor would be permitting the sale of the property to be used as “an excuse to ‘correct’ a claimed subjective mistake.” Ibid. The Appellate Division decision in Centorino criticized the Tax Court decision in Corrado v. Montclair Tp., 18 N.J. Tax 200 (Tax 1999), as giving an unduly narrow reading of Van Decker, limiting its consideration of allegations of spot assessment to the “welcome stranger” situation presented in Van Decker. Centorino, 347 N.J.Super. at 262-63, 789 A.2d 655.
In Schumar v. Bernardsville Borough, the same panel of the Appellate Division that had decided Centorino permitted a taxpayer to amend her complaint to allege spot assessment, even though the issue was first raised on the day of trial, finding that the issue of spot assessment should not have come as a surprise to the municipality since the contested assessment was the result of an increase following the sale of the residence to the plaintiff. 347 N.J.Super. at 332-33, 790 A.2d 171. Although Schumar dealt with the same “welcome stranger” spot assessment allegations as Van Decker, it broadly defined spot assessment as “a form of unconstitutional discrimination when a property is not uniformly taxed, but is improperly singled out for treatment not accorded all similarly situated properties.” Id. at 330-31, 790 A.2d 171. Schumar acknowledged, however, that in Van Decker the Supreme Court of New Jersey had approved selective reassessment when done for “legitimate reasons.” Id. at 331, 790 A.2d 171.
Neither of these cases provides much support for plaintiffs’ position. Plaintiffs’ properties were some (about half) of the apartment buildings in a town that had enacted a rent decontrol ordinance since the last revaluation had gone into effect. The assessor had observed what might be reasonably expected following rent decontrol, namely that sales prices of apartment buddings, following enactment of the ordinance, were in excess of the assessments set by the revaluation. All twenty-five members of the class were the subjects of the compliance plan. This is not *415 spot assessment even under the broader definition of the term used by the court in Schumar.
Moreover, as plaintiffs recognize, recent Appellate Division and Tax Court decisions do not support their contention that their right to be left alone (which they use to mean a right to have their assessments frozen until the next revaluation of the entire municipality) is superior to the command of the Uniformity Clause that all real property in a taxing district must be assessed according to the same standard of value and at the same rate. In Brunetti v. Cherry Hill Tp., 21 N.J. Tax 80, 81 (App.Div.2002), the court affirmed a Tax Court decision determining that spot assessment had not occurred where the assessor’s reassessment of the property was made after a contract of sale had been entered into but the reassessment was based on the assessor’s investigation into and his inspection of the property and his discovery that the property did not contain undevelopable wetlands as indicated on the municipality’s records.
In so deciding, the Appellate Division commented on Centorino’s criticism of Corrado, supra, 18 N.J. Tax 200. Brunetti, supra, 21 N.J. Tax at 85. The Appellate Division made clear that it had not implicitly overruled Corrado (which upheld an increased assessment based on additions and improvements to the property). Ibid. Brunetti also specifically rejected the taxpayer’s argument that the reassessment of his property was an unconstitutional spot assessment because other vacant land had not been simultaneously reassessed, noting that the taxpayer had “offered no support for his position that an assessor must ignore facts demonstrating the need to reassess a single piece of property if all property in the municipality cannot be simultaneously reexamined.” Id. at 86. The Appellate Division re-affirmed that New Jersey case law held to the contrary, citing, among other cases, Tri-Terminal Corp. v. Edgewater Bor., supra, 68 N.J. at 413-14, 346 A.2d 396; and Frieman v. Randolph Tp., supra. Brunetti, supra, 21 N.J. Tax at 87.
In Regent Care Center, Inc. v. City of Hackensack, 362 N.J. Super. 403, 828 A.2d 332 (App.Div.2003), the court affirmed the Tax *416 Court decision upholding the increase in the assessment of a nursing home notwithstanding plaintiffs argument that the increase constituted an impermissible spot assessment. The reassessment was not the consequence of a sale but the product of the assessor’s assessment maintenance program, in which he reviewed all line items on the municipality’s tax roll. Id. at 407, 828 A.2d 332. His review indicated, generally, that the values of single family homes had not increased since the last revaluation, but that approximately 150 commercial properties in the taxing district had been under-assessed, including the plaintiffs. Id. at 409-10, 828 A.2d 332. He considered the assessments on the two nursing homes in the municipality, and concluded that only plaintiffs was under-assessed based on sales of similar facilities in neighboring municipalities and revised the assessment accordingly. Id. at 410, 828 A.2d 332.
The Appellate Division recognized that the Uniformity Clause requires that all property in a taxing district must be assessed according to the same standard of value, and that pursuant to Van Decker, taxpayers must be treated in a manner comparable to other similarly situated taxpayers. Id. at 412, 828 A.2d 332. The court concluded that, while arbitrary intentional discrimination is unconstitutional, a municipality may revise assessments for legitimate reasons, even if there is no district-wide revaluation. Id. at 413, 828 A.2d 332.
[A]djusting an assessment for legitimate reasons is an appropriate exercise of the assessor’s statutory obligation and is not arbitrary or discriminatory. This is the appropriate mechanism by which the assessor keeps the tax rolls current when individual properties, based upon particularized, legitimate reasons, require adjustments. If other similarly-situated properties are overlooked and not also adjusted, the selection may be deemed arbitrary and discriminatory.
[Id. at 417, 828 A.2d 332.]
In the present case, similarly situated properties were not overlooked. All twenty-five apartment properties were reviewed, and the assessor also reviewed all of the approximately twenty-five neighborhoods or value control sectors in Lindenwold.
In Shippee v. Brick Township, 20 N.J. Tax 427, 428 (Tax 2002), the taxpayers attacked their assessments as being invalid “spot assessments” and sought the rollback of their assessments to their *417 prior levels. The court affirmed the assessments as part of a legitimate reassessment program, where the assessor considered each one of the value control sectors or neighborhoods identified in the municipality’s last revaluation and adjusted the assessments of properties in neighborhoods where the ratio of assessed to true value, as indicated by sales within the last year, fell outside of the Chapter 123 corridor. Id. at 434. The court concluded that the selection of properties for reassessment on the basis of differing rates of change of prices in geographically defined neighborhoods is a legitimate method of classification, unlike the invalid classification of recently sold properties condemned in Van Decker. Id. at 438, 576 A.2d 881. See also Mountain View Crossing Investors LLC v. Wayne Tp., 20 N.J. Tax 612, 620 (Tax 2003) (concluding that the Van Decker, Centorino, and Burnetti decisions, when read together, hold that an invalid spot assessment occurs only when there is no basis for reassessment other than a sale, and that an assessor may revise assessments for legitimate reasons independent of a sale, without a revaluation of the entire municipality).
Only assessment maintenance amounting to arbitrary, intentional discrimination is constitutionally invalid. Van Decker, supra, 120 N.J. at 362, 576 A.2d 881; Regent Care, supra, 362 N.J.Super. at 415, 828 A.2d 332. The case law, specifically Van Decker and its progeny, are clear that legitimate, non-discriminatory assessment maintenance will not violate the Uniformity Clause. There is nothing on the face of Chapter 101 that directs or contemplates discriminatory assessment. Rather, the statute incorporates the standard of the Uniformity Clause by directing a reassessment when “the assessor has reason to believe that property comprising all or part of a taxing district has been assessed at a value lower or higher than is consistent with the purpose of securing uniform taxable valuation of property according to law.” N.J.S.A. 54:4-23. Moreover, the statute seeks to prevent a “rogue” assessor from instituting a reassessment for reasons that are not legitimate, by requiring the approval of both the county board of taxation and the Director, Division of Taxation. Accordingly, I conclude Chapter 101 does not facially violate the Uniformity Clause.
*418 V. The Equal Protection Clause
Plaintiffs’ contention that Chapter 101 facially violates the Equal Protection Clause similarly is without any foundation in the case law. Van Decker, supra, clearly holds that it is only intentional discrimination that violates equal protection, and that what is invalid is singling out an individual and treating that individual differently than other persons of the same class. 120 N.J. at 362-64, 576 A.2d 881. A tax must in fact apply unequally to persons or property of the same class in order to violate the Equal Protection Clause. Allegheny Pittsburgh Coal Co. v. County Comm’n of Webster County, 488 U.S. 336, 343, 109 S.Ct. 633, 637-38, 102 L.Ed.2d 688, 697 (1989). The arbitrary or capricious selection or classification of property for tax treatment or selection or classification that does not rest on some reasonable consideration of difference or policy contravenes the Equal Protection Clause. Id. at 344, 109 S.Ct. at 638, 102 L.Ed.2d at 697. There is nothing on the face of Chapter 101 that warrants a conclusion that it violates the Equal Protection Clause. The mandate of Chapter 101 is an assessment list that assesses property within a taxing district consistent with securing uniform taxable valuation of property. N.J.S.A. 54:4-23.
VI. Mootness
The Director contends that all counts of the complaints should be dismissed because of mootness. The Director maintains that it is too late to prevent implementation of the already implemented compliance plan. Although plaintiffs seek the invalidation of the compliance plan, it is clear that what they are actually seeking is a rollback of them assessments for 2003 to the levels of tax year 2002. In rare instances, such as in Van Decker, this relief has been granted. If there is a determination that the compliance plan, as applied, was unlawful, it is possible to craft relief for those plaintiffs that were injured. Defendants’ motion to dismiss the complaints on the grounds of mootness is therefore denied.
VII. Trent Court LP and Stonington Court Associates
Plaintiffs have asked the court to reduce those assessments that have been increased as a consequence of the compli *419 ance plan. Two of the plaintiffs, Trent Court LP and Stonington Court Associates, had their assessments reduced as a consequence of the compliance plan, and I find that they have benefited by the compliance plan. It is possible for a taxpayer to be offended by an illegal taxing scheme, even one by which it has benefited. These two plaintiffs have not asked this court to roll back their 2003 tax year assessments to the level that existed prior to the implementation of the compliance plan, but have specifically limited their request for relief to the reduction of any increased assessment and the refund of any taxes paid as a consequence of an increased assessment. I can only conclude that they are not offended by the alleged constitutional violations from which they have benefited. Defendants’ motion to dismiss the complaints of Trent Court LP and Stonington Court Associates on the ground that they fail to state a claim is therefore granted.
VIII. The Mayor and Council of Lindenwold
The only allegations against the Borough of Lindenwold (as distinguished from its assessor) are that its “elected officials have acted in an arbitrary, capricious, and unreasonable manner by their approval of and or acquiescence to the aforesaid compliance plan.” The municipality is not charged with any duty under Chapter 101. The assessor is obliged to notify the mayor and governing body of the municipality, but those officials are not obliged to respond either with approval or disapproval. N.J.S.A. 54:4-23. The courts of this state have consistently held that the Legislature has charged assessors with determination of the valuation of all property in a taxing district, and that municipal officials may not interfere with those duties. See Freehold Bor. v. WNY Properties L.P./Post & Coach, 20 N.J. Tax 588, 600-02 (Tax 2003) (reviewing cases).
It is not a matter of any legal consequence whether or not Lindenwold’s elected officials approved or acquiesced in the compliance plan. I conclude that the complaint fails to state a claim against those officials and Count 7 of each of the remaining complaints is therefore dismissed.
*420 IX. Conclusion
For the foregoing reasons, I find that Chapter 101 is facially constitutional. I also conclude that certification as a class action is not appropriate, and that the complaint fails to state a claim upon which relief can be granted with respect to the Mayor and Council of Lindenwold. Counts 2, 3, 7 and 8 of each of the complaints are dismissed. The complaints of Trent Court and Stonington Court Associates are dismissed in their entirety.
Finally, although the Director’s motion was termed a motion to dismiss the complaints for failure to state a claim, the arguments made were directed at the facial constitutionality of Chapter 101. Plaintiffs may still establish that the particular assessment compliance plan is invalid as applied. What plaintiffs must establish, however, is that the actions of the assessor in selecting the apartment properties for reassessment amount to arbitrary, intentional and unreasonable discrimination. Taken together, the decisions on the issue of spot assessment conclude that invalid spot assessment occurs only when there is no basis for reassessment other than a sale, provided there are legitimate reasons for the revision of assessments. Mountain View Crossing Investors LLC, supra, 20 N.J. Tax at 612. In his deposition testimony, the assessor has already articulated a recognized, legitimate reason for undertaking a reassessment of the plaintiffs’ property.
The matter will proceed to trial on the remaining counts of the remaining complaints on the issue of whether Chapter 101 was unlawfully applied in this case. Orders are enclosed.

 Those terms do not appear in Chapter 101 or in any other local property tax statute. The designation of neighborhoods or value control sectors is apparently accomplished as part of a complete revaluation. See Shippee v. Brick Tp., 20 N.J.Tax 427, 431 (Tax 2002). The terminology was incorporated in N.J.A.C. 18:12-4.8(a)(14), adopted in 2005. See 37 N.J.R. 1128(a) (Apr. 18, 2005); 37 N.J.R. 4462(a) (Nov. 21, 2005).

 The cover letter transmitting the approved plan was dated November 8, 2002. The Division’s approval noted on the application form for the compliance plan was dated November 18, 2002. Presumably, one or the other of the documents contains a typographical error. The difference in dates is not significant for purposes of these actions.

 Although these are not the only such cases in New Jersey. See, e.g., American Trucking Associations v. State of New Jersey, 180 N.J. 377, 852 A.2d 142 (2004).